(Slip Opinion) OCTOBER TERM, 2006 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## BOWLES *v.* RUSSELL, WARDEN

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 06–5306.  Argued March 26, 2007—Decided June 14, 2007

Having failed to file a timely notice of appeal from the Federal District Court's denial of habeas relief, petitioner Bowles moved to reopen the filing period pursuant to Federal Rule of Appellate Procedure 4(a)(6), which allows a district court to grant a 14-day extension under certain conditions, see 28 U. S. C. §2107(c).  The District Court granted Bowles' motion but inexplicably gave him 17 days to file his notice of appeal.  He filed within the 17 days allowed by the District Court, but after the 14-day period allowed by Rule 4(a)(6) and §2107(c).  The Sixth Circuit held that the notice was untimely and that it therefore lacked jurisdiction to hear the case under this Court's precedent.

*Held:* Bowles' untimely notice of appeal—though filed in reliance upon the District Court's order—deprived the Sixth Circuit of jurisdiction. Pp. 2–10.

  (a) The taking of an appeal in a civil case within the time prescribed by statute is "mandatory and jurisdictional." *Griggs* v. *Provident Consumer Discount Co.*, 459 U. S. 56, 61 *(per curiam).*  There is a significant distinction between time limitations set forth in a statute such as §2107, which limit a court's jurisdiction, see, *e.g., Kontrick* v. *Ryan*, 540 U. S. 443, 453, and those based on court rules, which do not, see, *e.g., id.,* at 454.  *Arbaugh* v. *Y & H Corp.*, 546 U. S. 500, 505, and *Scarborough* v. *Principi*, 541 U. S. 401, 314, distinguished.  Because Congress decides, within constitutional bounds, whether federal courts can hear cases at all, it can also determine when, and under what conditions, federal courts can hear them.  See *United States* v. *Curry*, 6 How. 106, 113.  And when an "appeal has not been prosecuted in the manner directed, within the time limited by the acts of Congress, it must be dismissed for want of jurisdiction." Id., at 113.  The resolution of this case follows naturally from this

reasoning.  Because Congress specifically limited the amount of time
by which district courts can extend the notice-of-appeal period in
§2107(c), Bowles' failure to file in accordance with the statute de-
prived the Court of Appeals of jurisdiction.  And because Bowles' er-
ror is one of jurisdictional magnitude, he cannot rely on forfeiture or
waiver to excuse his lack of compliance.  Pp. 4–8.

    (b) Bowles' reliance on the "unique circumstances" doctrine, rooted
in *Harris Truck Lines, Inc.* v. *Cherry Meat Packers, Inc.*, 371 U. S.
215 *(per curiam)* and applied in *Thompson* v. *INS*, 375 U. S. 384 *(per
curiam)*, is rejected.  Because this Court has no authority to create
equitable exceptions to jurisdictional requirements, use of the doc-
trine is illegitimate.  *Harris Truck Lines* and *Thompson* are overruled
to the extent they purport to authorize an exception to a jurisdic-
tional rule.  Pp. 8–9.

432 F. 3d 668, affirmed.

    THOMAS, J., delivered the opinion of the Court, in which ROBERTS,
C. J., and SCALIA, KENNEDY, and ALITO, JJ., joined.  SOUTER, J., filed a
dissenting opinion, in which STEVENS, GINSBURG, and BREYER, JJ.,
joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 06–5306

KEITH BOWLES, PETITIONER *v.* HARRY RUSSELL, WARDEN

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[June 14, 2007]

JUSTICE THOMAS delivered the opinion of the Court.

In this case, a District Court purported to extend a party's time for filing an appeal beyond the period allowed by statute. We must decide whether the Court of Appeals had jurisdiction to entertain an appeal filed after the statutory period but within the period allowed by the District Court's order. We have long and repeatedly held that the time limits for filing a notice of appeal are jurisdictional in nature. Accordingly, we hold that petitioner's untimely notice—even though filed in reliance upon a District Court's order—deprived the Court of Appeals of jurisdiction.

I

In 1999, an Ohio jury convicted petitioner Keith Bowles of murder for his involvement in the beating death of Ollie Gipson. The jury sentenced Bowles to 15 years to life imprisonment. Bowles unsuccessfully challenged his conviction and sentence on direct appeal.

Bowles then filed a federal habeas corpus application on September 5, 2002. On September 9, 2003, the District Court denied Bowles habeas relief. After the entry of final

judgment, Bowles had 30 days to file a notice of appeal. Fed. Rule App. Proc. 4(a)(1)(A); 28 U. S. C. §2107(a). He failed to do so. On December 12, 2003, Bowles moved to reopen the period during which he could file his notice of appeal pursuant to Rule 4(a)(6), which allows district courts to extend the filing period for 14 days from the day the district court grants the order to reopen, provided certain conditions are met. See §2107(c).

On February 10, 2004, the District Court granted Bowles' motion. But rather than extending the time period by 14 days, as Rule 4(a)(6) and §2107(c) allow, the District Court inexplicably gave Bowles 17 days—until February 27—to file his notice of appeal. Bowles filed his notice on February 26—within the 17 days allowed by the District Court's order, but after the 14-day period allowed by Rule 4(a)(6) and §2107(c).

On appeal, respondent Russell argued that Bowles' notice was untimely and that the Court of Appeals therefore lacked jurisdiction to hear the case. The Court of Appeals agreed. It first recognized that this Court has consistently held the requirement of filing a timely notice of appeal is "mandatory and jurisdictional." 432 F. 3d 668, 673 (CA6 2005) (citing *Browder* v. *Director, Dept. of Corrections of Ill.*, 434 U. S. 257, 264 (1978)). The court also noted that courts of appeals have uniformly held that Rule 4(a)(6)'s 180-day period for filing a motion to reopen is also mandatory and not susceptible to equitable modification. 432 F. 3d, at 673 (collecting cases). Concluding that "the fourteen-day period in Rule 4(a)(6) should be treated as strictly as the 180-day period in that same Rule," *id.,* at 676, the Court of Appeals held that it was without jurisdiction. We granted certiorari, 549 U. S. ___ (2006), and now affirm.

## II

According to 28 U. S. C. §2107(a), parties must file

notices of appeal within 30 days of the entry of the judgment being appealed. District courts have limited authority to grant an extension of the 30-day time period. Relevant to this case, if certain conditions are met, district courts have the statutory authority to grant motions to reopen the time for filing an appeal for 14 additional days. §2107(c). Rule 4 of the Federal Rules of Appellate Procedure carries §2107 into practice. In accord with §2107(c), Rule 4(a)(6) describes the district court's authority to reopen and extend the time for filing a notice of appeal after the lapse of the usual 30 days:

> "(6) **Reopening the Time to File an Appeal.**
>
> "The district court may reopen the time to file an appeal *for a period of 14 days after the date when its order to reopen is entered,* but only if all the following conditions are satisfied:
>
> "(A) the motion is filed within 180 days after the judgment or order is entered or within 7 days after the moving party receives notice of the entry, whichever is earlier;
>
> "(B) the court finds that the moving party was entitled to notice of the entry of the judgment or order sought to be appealed but did not receive the notice from the district court or any party within 21 days after entry; and
>
> "(C) the court finds that no party would be prejudiced." (Emphasis added.)[1]

It is undisputed that the District Court's order in this case purported to reopen the filing period for more than 14 days. Thus, the question before us is whether the Court of Appeals lacked jurisdiction to entertain an appeal filed

---

[1] The Rule was amended, effective December 1, 2005, to require that notice be pursuant to Fed. Rule Civ. Proc. 77(d). The substance is otherwise unchanged.

outside the 14-day window allowed by §2107(c) but within the longer period granted by the District Court.

## A

This Court has long held that the taking of an appeal within the prescribed time is "mandatory and jurisdictional." *Griggs* v. *Provident Consumer Discount Co.*, 459 U. S. 56, 61 (1982) *(per curiam)* (internal quotation marks omitted);[2] accord, *Hohn* v. *United States,* 524 U. S. 236, 247 (1998); *Torres* v. *Oakland Scavenger Co.,* 487 U. S. 312, 314–315 (1988); *Browder*, *supra,* at 264. Indeed, even prior to the creation of the circuit courts of appeals, this Court regarded statutory limitations on the timing of appeals as limitations on its own jurisdiction. See *Scarborough* v. *Pargoud*, 108 U. S. 567, 568 (1883) ("[T]he writ of error in this case was not brought within the time limited by law, and we have consequently no jurisdiction"); *United States* v. *Curry*, 6 How. 106, 113 (1848) ("[A]s this appeal has not been prosecuted in the manner directed, within the time limited by the acts of Congress, it must be

――――――

[2] *Griggs* and several other of this Court's decisions ultimately rely on *United States* v. *Robinson,* 361 U. S. 220, 229 (1960), for the proposition that the timely filing of a notice of appeal is jurisdictional. As the dissent notes, we have recently questioned *Robinson'*s use of the term "jurisdictional." *Post,* at 2 (opinion of SOUTER, J.) Even in our cases criticizing *Robinson*, however, we have noted the jurisdictional significance of the fact that a time limit is set forth in a statute, see *infra*, at 5–6, and have even pointed to §2107 as a statute deserving of jurisdictional treatment. *Infra,* at 6. Additionally, because we rely on those cases in reaching today's holding, the dissent's rhetoric claiming that we are ignoring their reasoning is unfounded.

Regardless of this Court's past careless use of terminology, it is indisputable that time limits for filing a notice of appeal have been treated as jurisdictional in American law for well over a century. Consequently, the dissent's approach would require the repudiation of a century's worth of precedent and practice in American courts. Given the choice between calling into question some dicta in our recent opinions and effectively overruling a century's worth of practice, we think the former option is the only prudent course.

dismissed for want of jurisdiction"). Reflecting the consistency of this Court's holdings, the courts of appeals routinely and uniformly dismiss untimely appeals for lack of jurisdiction. See, *e.g.*, *Atkins* v. *Medical Dept. of Augusta Cty. Jail*, No. 06–7792, 2007 WL 1048810 (CA4, Apr. 4, 2007) *(per curiam)* (unpublished); see also 15A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure §3901, p. 6 (2d ed. 1992) ("The rule is well settled that failure to file a timely notice of appeal defeats the jurisdiction of a court of appeals"). In fact, the author of today's dissent recently reiterated that "[t]he accepted fact is that some time limits are jurisdictional even though expressed in a separate statutory section from jurisdictional grants, see, *e.g.*, . . . §2107 (providing that notice of appeal in civil cases must be filed 'within thirty days after the entry of such judgment')." *Barnhart* v. *Peabody Coal Co.*, 537 U. S. 149, 160, n. 6 (2003) (majority opinion of SOUTER, J., joined by STEVENS, GINSBURG, and BREYER, JJ., *inter alios*) (citation omitted).

Although several of our recent decisions have undertaken to clarify the distinction between claims-processing rules and jurisdictional rules, none of them calls into question our longstanding treatment of statutory time limits for taking an appeal as jurisdictional. Indeed, those decisions have also recognized the jurisdictional significance of the fact that a time limitation is set forth in a statute. In *Kontrick* v. *Ryan*, 540 U. S. 443 (2004), we held that failure to comply with the time requirement in Federal Rule of Bankruptcy Procedure 4004 did not affect a court's subject-matter jurisdiction. Critical to our analysis was the fact that "[n]o statute . . . specifies a time limit for filing a complaint objecting to the debtor's discharge." 540 U. S., at 448. Rather, the filing deadlines in the Bankruptcy Rules are "'procedural rules adopted by the Court for the orderly transaction of its business'" that are "'not jurisdictional.'" *Id.,* at 454 (quoting *Schacht* v. *United*

*States*, 398 U. S. 58, 64 (1970)).  Because "[o]nly Congress may determine a lower federal court's subject-matter jurisdiction," 540 U. S., at 452 (citing U. S. Const., Art. III, §1), it was improper for courts to use "the term 'jurisdictional' to describe emphatic time prescriptions in rules of court," 540 U. S*.,* at 454.  See also *Eberhart* v. *United States*, 546 U. S. 12 (2005) *(per curiam).*  As a point of contrast, we noted that §2107 contains the type of statutory time constraints that would limit a court's jurisdiction.  540 U. S., at 453, and n. 8.[3]  Nor do *Arbaugh* v. *Y & H Corp.*, 546 U. S. 500 (2006), or *Scarborough* v. *Principi*, 541 U. S. 401 (2004), aid petitioner.  In *Arbaugh*, the statutory limitation was an employee-numerosity requirement, not a time limit.  546 U. S., at 505.  *Scarborough*, which addressed the availability of attorney's fees under the Equal Access to Justice Act, concerned "a mode of relief . . . ancillary to the judgment of a court" that already had plenary jurisdiction.  541 U. S., at 413.

This Court's treatment of its certiorari jurisdiction also demonstrates the jurisdictional distinction between court-promulgated rules and limits enacted by Congress.  According to our Rules, a petition for a writ of certiorari must be filed within 90 days of the entry of the judgment sought to be reviewed.  See this Court's Rule 13.1.  That 90-day period applies to both civil and criminal cases.  But the 90-day period for civil cases derives from both this Court's Rule 13.1 and 28 U. S. C. §2101(c).  We have repeatedly held that this statute-based filing period for civil

---

[3]At least one federal court of appeals has noted that *Kontrick* and *Eberhart* "called . . . into question" the "longstanding assumption" that the timely filing of a notice of appeal is a jurisdictional requirement. *United States* v. *Sadler*, 480 F. 3d 932, 935 (CA9 2007).  That court nonetheless found that "[t]he distinction between jurisdictional rules and inflexible but not jurisdictional timeliness rules drawn by *Eberhart* and *Kontrick* turns largely on whether the timeliness requirement is or is not grounded in a statute." *Id*., at 936.

cases is jurisdictional. See, *e.g.*, *Federal Election Comm'n* v. *NRA Political Victory Fund*, 513 U. S. 88, 90 (1994). Indeed, this Court's Rule 13.2 cites §2101(c) in directing the Clerk not to file any petition "that is *jurisdictionally* out of time." (Emphasis added.) On the other hand, we have treated the rule-based time limit for criminal cases differently, stating that it may be waived because "[t]he procedural rules adopted by the Court for the orderly transaction of its business are not jurisdictional and can be relaxed by the Court in the exercise of its discretion . . . ." *Schacht, supra,* at 64.[4]

Jurisdictional treatment of statutory time limits makes good sense. Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider. Because Congress decides whether federal courts can hear cases at all, it can also determine when, and under what conditions, federal courts can hear them. See *Curry*, 6 How., at 113. Put another way, the notion of "'subject-matter'" jurisdiction obviously extends to "'classes of cases . . . falling within a court's adjudicatory authority,'" *Eberhart, supra,* at 16 (quoting *Kontrick, supra,* at 455), but it is no less "jurisdictional" when Con-

———————

[4] The dissent minimizes this argument, stating that the Court understood §2101(c) as jurisdictional "in the days when we used the term imprecisely." *Post*, at 4, n. 4. The dissent's apathy is surprising because if our treatment of our own jurisdiction is simply a relic of the old days, it is a relic with severe consequences. Just a few months ago, the Clerk, pursuant to this Court's Rule 13.2, refused to accept a petition for certiorari submitted by Ryan Heath Dickson because it had been filed one day late. In the letter sent to Dickson's counsel, the Clerk explained that "[w]hen the time to file a petition for a writ of certiorari in a civil case . . . has expired, the Court no longer has the power to review the petition." Letter from William K. Suter, Clerk of Court, to Ronald T. Spriggs (Dec. 28, 2006). Dickson was executed on April 26, 2007, without any Member of this Court having even seen his petition for certiorari. The rejected certiorari petition was Dickson's first in this Court, and one can only speculate as to whether denial of that petition would have been a foregone conclusion.

gress forbids federal courts from adjudicating an otherwise legitimate "class of cases" after a certain period has elapsed from final judgment.

The resolution of this case follows naturally from this reasoning. Like the initial 30-day period for filing a notice of appeal, the limit on how long a district court may reopen that period is set forth in a statute, 28 U. S. C. §2107(c). Because Congress specifically limited the amount of time by which district courts can extend the notice-of-appeal period in §2107(c), that limitation is more than a simple "claim-processing rule." As we have long held, when an "appeal has not been prosecuted in the manner directed, within the time limited by the acts of Congress, it must be dismissed for want of jurisdiction." *Curry*, *supra,* at 113. Bowles' failure to file his notice of appeal in accordance with the statute therefore deprived the Court of Appeals of jurisdiction. And because Bowles' error is one of jurisdictional magnitude, he cannot rely on forfeiture or waiver to excuse his lack of compliance with the statute's time limitations. See *Arbaugh*, *supra,* at 513–514.

B

Bowles contends that we should excuse his untimely filing because he satisfies the "unique circumstances" doctrine, which has its roots in *Harris Truck Lines, Inc.* v. *Cherry Meat Packers, Inc.*, 371 U. S. 215 (1962) *(per curiam).* There, pursuant to then-Rule 73(a) of the Federal Rules of Civil Procedure, a District Court entertained a timely motion to extend the time for filing a notice of appeal. The District Court found the moving party had established a showing of "excusable neglect," as required by the Rule, and granted the motion. The Court of Appeals reversed the finding of excusable neglect and, accordingly, held that the District Court lacked jurisdiction to grant the extension. *Harris Truck Lines, Inc.* v. *Cherry*

*Meat Packers, Inc.*, 303 F. 2d 609, 611–612 (CA7 1962). This Court reversed, noting "the obvious great hardship to a party who relies upon the trial judge's finding of 'excusable neglect.'" 371 U. S., at 217.

Today we make clear that the timely filing of a notice of appeal in a civil case is a jurisdictional requirement. Because this Court has no authority to create equitable exceptions to jurisdictional requirements, use of the "unique circumstances" doctrine is illegitimate. Given that this Court has applied *Harris Truck Lines* only once in the last half century, *Thompson* v. *INS*, 375 U. S. 384 (1964) *(per curiam)*, several courts have rightly questioned its continuing validity. See, *e.g.*, *Panhorst* v. *United States,* 241 F. 3d 367, 371 (CA4 2001) (doubting "the continued viability of the unique circumstances doctrine"). See also *Houston* v. *Lack*, 487 U. S. 266, 282 (1988) (SCALIA, J., dissenting) ("Our later cases . . . effectively repudiate the *Harris Truck Lines* approach . . ."). See also *Osterneck* v. *Ernst & Whinney*, 489 U. S. 169, 170 (1989) (referring to "the so-called 'unique circumstances' exception" to the timely appeal requirement). We see no compelling reason to resurrect the doctrine from its 40-year slumber. Accordingly, we reject Bowles' reliance on the doctrine, and we overrule *Harris Truck Lines* and *Thompson* to the extent they purport to authorize an exception to a jurisdictional rule.

### C

If rigorous rules like the one applied today are thought to be inequitable, Congress may authorize courts to promulgate rules that excuse compliance with the statutory time limits. Even narrow rules to this effect would give rise to litigation testing their reach and would no doubt detract from the clarity of the rule. However, congressionally authorized rulemaking would likely lead to less litigation than court-created exceptions without authorization. And in all events, for the reasons discussed above,

we lack present authority to make the exception petitioner
seeks.

## III

The Court of Appeals correctly held that it lacked juris-
diction to consider Bowles' appeal.  The judgment of the
Court of Appeals is affirmed.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

————

No. 06–5306

————

## KEITH BOWLES, PETITIONER *v.* HARRY RUSSELL, WARDEN

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SIXTH CIRCUIT

[June 14, 2007]

JUSTICE SOUTER, with whom JUSTICE STEVENS, JUSTICE
GINSBURG, and JUSTICE BREYER join, dissenting.

The District Court told petitioner Keith Bowles that his
notice of appeal was due on February 27, 2004. He filed a
notice of appeal on February 26, only to be told that he
was too late because his deadline had actually been Feb-
ruary 24. It is intolerable for the judicial system to treat
people this way, and there is not even a technical justifica-
tion for condoning this bait and switch. I respectfully
dissent.

I

"'Jurisdiction,'" we have warned several times in the
last decade, "'is a word of many, too many, meanings.'"
*Steel Co.* v. *Citizens for Better Environment*, 523 U. S. 83,
90 (1998) (quoting *United States* v. *Vanness*, 85 F. 3d 661,
663, n. 2 (CADC 1996)); *Kontrick* v. *Ryan*, 540 U. S. 443,
454 (2004) (quoting *Steel Co.*); *Arbaugh* v. *Y & H Corp.*,
546 U. S. 500, 510 (2006) (quoting *Steel Co.*); *Rockwell Int'l
Corp.* v. *United States*, 549 U. S. \_\_\_, \_\_\_ (2007) (slip op.,
at 9) (quoting *Steel Co.*). This variety of meaning has
insidiously tempted courts, this one included, to engage in
"less than meticulous," *Kontrick, supra,* at 454, sometimes
even "profligate . . . use of the term," *Arbaugh, supra,* at
510.

In recent years, however, we have tried to clean up our language, and until today we have been avoiding the erroneous jurisdictional conclusions that flow from indiscriminate use of the ambiguous word. Thus, although we used to call the sort of time limit at issue here "mandatory and jurisdictional," *United States* v. *Robinson*, 361 U. S. 220, 229 (1960), we have recently and repeatedly corrected that designation as a misuse of the "jurisdiction" label. *Arbaugh*, *supra*, at 510 (citing *Robinson* as an example of improper use of the term "jurisdiction"); *Eberhart* v. *United States*, 546 U. S. 12, 17–18 (2005) *(per curiam)* (same); *Kontrick*, *supra*, at 454 (same).

But one would never guess this from reading the Court's opinion in this case, which suddenly restores *Robinson*'s indiscriminate use of the "mandatory and jurisdictional" label to good law in the face of three unanimous repudiations of *Robinson*'s error. See *ante*, at 4. This is puzzling, the more so because our recent (and, I repeat, unanimous) efforts to confine jurisdictional rulings to jurisdiction proper were obviously sound, and the majority makes no attempt to show they were not.[1]

The stakes are high in treating time limits as jurisdictional. While a mandatory but nonjurisdictional limit is enforceable at the insistence of a party claiming its benefit or by a judge concerned with moving the docket, it may be waived or mitigated in exercising reasonable equitable

---

[1] The Court thinks my fellow dissenters and I are forgetful of an opinion I wrote and the others joined in 2003, which referred to the 30-day rule of 28 U. S. C. §2107(a) as a jurisdictional time limit. See *ante*, at 5 (quoting *Barnhart* v. *Peabody Coal Co.*, 537 U. S. 149, 160, n. 6 (2003)). But that reference in *Barnhart* was a perfect example of the confusion of the mandatory and the jurisdictional that the entire Court has spent the past four years repudiating in *Arbaugh*, *Eberhart*, and *Kontrick*. My fellow dissenters and I believe that the Court was right to correct its course; the majority, however, will not even admit that we deliberately changed course, let alone explain why it is now changing course again.

discretion. But if a limit is taken to be jurisdictional, waiver becomes impossible, meritorious excuse irrelevant (unless the statute so provides), and *sua sponte* considera- tion in the courts of appeals mandatory, see *Arbaugh, supra*, at 514.[2] As the Court recognizes, *ante*, at 5–6, this is no way to regard time limits set out in a court rule rather than a statute, see *Kontrick, supra*, at 452 ("Only Congress may determine a lower federal court's subject- matter jurisdiction"). But neither is jurisdictional treat- ment automatic when a time limit is statutory, as it is in this case. Generally speaking, limits on the reach of fed- eral statutes, even nontemporal ones, are only jurisdic- tional if Congress says so: "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in charac- ter." *Arbaugh*, 546 U. S., at 516. Thus, we have held "that time prescriptions, however emphatic, 'are not properly typed "jurisdictional," '" *id.*, at 510 (quoting *Scarborough* v. *Principi*, 541 U. S. 401, 414 (2004)), absent some juris- dictional designation by Congress. Congress put no juris- dictional tag on the time limit here.[3]

———————

[2] The requirement that courts of appeals raise jurisdictional issues *sua sponte* reveals further ill effects of today's decision. Under §2107(c), "[t]he district court may . . . extend the time for appeal upon a showing of excusable neglect or good cause." By the Court's logic, if a district court grants such an extension, the extension's propriety is subject to mandatory *sua sponte* review in the court of appeals, even if the exten- sion was unopposed throughout, and upon finding error the court of appeals must dismiss the appeal. I see no more justification for such a rule than reason to suspect Congress meant to create it.

[3] The majority answers that a footnote of our unanimous opinion in *Kontrick* v. *Ryan*, 540 U. S. 443 (2004), used §2107(a) as an illustration of a jurisdictional time limit. *Ante*, at 6 ("[W]e noted that §2107 con- tains the type of statutory time constraints that would limit a court's jurisdiction. 540 U. S., at 453, and n. 8"). What the majority overlooks, however, are the post-*Kontrick* cases showing that §2107(a) can no longer be seen as an example of a jurisdictional time limit. The juris- dictional character of the 30- (or 60-)day time limit for filing notices of

The doctrinal underpinning of this recently repeated view was set out in *Kontrick:* "the label 'jurisdictional' [is appropriate] not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority." 540 U. S., at 455.  A filing deadline is the paradigm of a claim-processing rule, not of a delineation of cases that federal courts may hear, and so it falls outside the class of limitations on subject matter jurisdiction unless Congress says otherwise.[4]

—————————

appeal under the present §2107(a) was first pronounced by this Court in *Browder* v. *Director, Dept. of Corrections of Ill.*, 434 U. S. 257 (1978). But in that respect *Browder* was undercut by *Eberhart* v. *United States*, 546 U. S. 12 (2005) *(per curiam)*, decided after *Kontrick*.  *Eberhart* cited *Browder* (along with several of the other cases on which the Court now relies) as an example of the basic error of confusing mandatory time limits with jurisdictional limitations, a confusion for which *United States* v. *Robinson*, 361 U. S. 220 (1960), was responsible.  Compare *ante*, at 4 (citing *Browder*, *Griggs* v. *Provident Consumer Discount Co.*, 459 U. S. 56 (1982) *(per curiam)*, and *Hohn* v. *United States*, 524 U. S. 236 (1998)), with *Eberhart*, *supra*, at 17–18 (citing those cases as examples of the confusion caused by *Robinson*'s imprecise language). *Eberhart* was followed four months later by *Arbaugh* v. *Y & H Corp.*, 546 U. S. 500 (2006), which summarized the body of recent decisions in which the Court "clarified that time prescriptions, however emphatic, are not properly typed jurisdictional," *id.*, at 510 (internal quotation marks omitted).  This unanimous statement of all Members of the Court participating in the case eliminated the option of continuing to accept §2107(a) as jurisdictional and it precludes treating the 14-day period of §2107(c) as a limit on jurisdiction.

    [4]The Court points out that we have affixed a "jurisdiction" label to the time limit contained in §2101(c) for petitions for writ of certiorari in civil cases.  *Ante*, at 6–7 (citing *Federal Election Comm'n* v. *NRA Political Victory Fund*, 513 U. S. 88, 90 (1994); this Court's Rule 13.2). Of course, we initially did so in the days when we used the term imprecisely.  The status of §2101(c) is not before the Court in this case, so I express no opinion on whether there are sufficient reasons to treat it as jurisdictional.  The Court's observation that jurisdictional treatment has had severe consequences in that context, *ante*, at 7, n. 4, does

The time limit at issue here, far from defining the set of cases that may be adjudicated, is much more like a statute of limitations, which provides an affirmative defense, see Fed. Rule Civ. Proc. 8(c), and is not jurisdictional, *Day* v. *McDonough*, 547 U. S. 198, 205 (2006). Statutes of limitations may thus be waived, *id.*, at 207–208, or excused by rules, such as equitable tolling, that alleviate hardship and unfairness, see *Irwin* v. *Department of Veterans Affairs*, 498 U. S. 89, 95–96 (1990).

Consistent with the traditional view of statutes of limitations, and the carefully limited concept of jurisdiction explained in *Arbaugh*, *Eberhart*, and *Kontrick*, an exception to the time limit in 28 U. S. C. §2107(c) should be available when there is a good justification for one, for reasons we recognized years ago. In *Harris Truck Lines, Inc.* v. *Cherry Meat Packers, Inc.*, 371 U. S. 215, 217 (1962) *(per curiam)*, and *Thompson* v. *INS*, 375 U. S. 384, 387 (1964) *(per curiam)*, we found that "unique circumstances" excused failures to comply with the time limit. In fact, much like this case, *Harris* and *Thompson* involved district court errors that misled litigants into believing they had more time to file notices of appeal than a statute actually provided. Thus, even back when we thoughtlessly called time limits jurisdictional, we did not actually treat them as beyond exemption to the point of shrugging at the inequity of penalizing a party for relying on what a federal judge had said to him. Since we did not dishonor reasonable reliance on a judge's official word back in the days when we uncritically had a jurisdictional reason to be unfair, it is unsupportable to dishonor it now, after repeatedly disavowing any such jurisdictional justification

_____

nothing to support an argument that jurisdictional treatment is sound, but instead merely shows that the certiorari rule, too, should be reconsidered in light of our recent clarifications of what sorts of rules should be treated as jurisdictional.

that would apply to the 14-day time limit of §2107(c).

The majority avoids clashing with *Harris* and *Thompson* by overruling them on the ground of their "slumber," *ante*, at 9, and inconsistency with a time-limit-as-jurisdictional rule.[5]  But eliminating those precedents underscores what has become the principal question of this case: why does today's majority refuse to come to terms with the steady stream of unanimous statements from this Court in the past four years, culminating in *Arbaugh*'s summary a year ago?  The majority begs this question by refusing to confront what we have said: "in recent decisions, we have clarified that time prescriptions, however emphatic, 'are not properly typed "jurisdictional."'"  *Arbaugh*, 546 U. S., at 510 (quoting *Scarborough*, 541 U. S., at 414).   This statement of the Court, and those preceding it for which it stands as a summation, cannot be dismissed as "some dicta," *ante*, at 4, n. 2, and cannot be ignored on the ground that some of them were made in cases where the challenged restriction was not a time limit, see *ante*, at 6. By its refusal to come to grips with our considered statements of law the majority leaves the Court incoherent.

In ruling that Bowles cannot depend on the word of a District Court Judge, the Court demonstrates that no one may depend on the recent, repeated, and unanimous statements of all participating Justices of this Court.  Yet more incongruously, all of these pronouncements by the Court, along with two of our cases,[6] are jettisoned in a

⎯⎯⎯⎯⎯⎯

[5] With no apparent sense of irony, the Court finds that "'[o]ur later cases . . . effectively repudiate the *Harris Truck Lines* approach.'"  *Ante*, at 9 (quoting *Houston* v. *Lack*, 487 U. S. 266, 282 (1988) (SCALIA, J., dissenting); omission in original).  Of course, those "later cases" were *Browder* and *Griggs*, see *Houston*, *supra*, at 282, which have themselves been repudiated, not just "effectively" but explicitly, in *Eberhart*. See n. 3, *supra*.

[6] Three, if we include *Wolfsohn* v. *Hankin*, 376 U. S. 203 (1964) *(per curiam).*

ruling for which the leading justification is *stare decisis*, see *ante*, at 4 ("This Court has long held . . .").

## II

We have the authority to recognize an equitable exception to the 14-day limit, and we should do that here, as it certainly seems reasonable to rely on an order from a federal judge.[7] Bowles, though, does not have to convince us as a matter of first impression that his reliance was justified, for we only have to look as far as *Thompson* to know that he ought to prevail. There, the would-be appellant, Thompson, had filed post-trial motions 12 days after the District Court's final order. Although the rules said they should have been filed within 10, Fed. Rules Civ. Proc. 52(b) and 59(b) (1964), the trial court nonetheless had "specifically declared that the 'motion for a new trial' was made 'in ample time.'" *Thompson*, 375 U. S., at 385. Thompson relied on that statement in filing a notice of appeal within 60 days of the denial of the post-trial motions but not within 60 days of entry of the original judgment. Only timely post-trial motions affected the 60-day time limit for filing a notice of appeal, Rule 73(a) (1964), so the Court of Appeals held the appeal untimely. We vacated because Thompson "relied on the statement of the District Court and filed the appeal within the assumedly new deadline but beyond the old deadline." *Id.*, at 387.

*Thompson* should control. In that case, and this one, the untimely filing of a notice of appeal resulted from reliance on an error by a district court, an error that caused no evident prejudice to the other party. Actually, there is one difference between *Thompson* and this case:

---

[7]As a member of the Federal Judiciary, I cannot help but think that reliance on our orders is reasonable. See O. Holmes, Natural Law, in Collected Legal Papers 311 (1920). I would also rest better knowing that my innocent errors will not jeopardize anyone's rights unless absolutely necessary.

SOUTER, J., dissenting

Thompson filed his post-trial motions late and the District Court was mistaken when it said they were timely; here, the District Court made the error out of the blue, not on top of any mistake by Bowles, who then filed his notice of appeal by the specific date the District Court had declared timely. If anything, this distinction ought to work in Bowles's favor. Why should we have rewarded Thompson, who introduced the error, but now punish Bowles, who merely trusted the District Court's statement?[8]

Under *Thompson*, it would be no answer to say that Bowles's trust was unreasonable because the 14-day limit was clear and counsel should have checked the judge's arithmetic. The 10-day limit on post-trial motions was no less pellucid in *Thompson*, which came out the other way. And what is more, counsel here could not have uncovered the court's error simply by counting off the days on a calendar. Federal Rule of Appellate Procedure 4(a)(6) allows a party to file a notice of appeal within 14 days of "the date when [the district court's] order to reopen is entered." See also 28 U. S. C. §2107(c)(2) (allowing reopening for "14 days from the date of entry"). The District Court's order was dated February 10, 2004, which reveals

—————

[8] Nothing in *Osterneck* v. *Ernst & Whinney*, 489 U. S. 169 (1989), requires such a strange rule. In *Osterneck*, we described the "unique circumstances" doctrine as applicable "only where a party has performed an act which, if properly done, would postpone the deadline for filing his appeal and has received specific assurance by a judicial officer that this act has been properly done." *Id.*, at 179. But the point we were making was that *Thompson* could not excuse a lawyer's original mistake in a case in which a judge had not assured him that his act had been timely; the Court of Appeals in *Osterneck* had found that no court provided a specific assurance, and we agreed. I see no reason to take *Osterneck*'s language out of context to buttress a fundamentally unfair resolution of an issue the *Osterneck* Court did not have in front of it. Cf. *St. Mary's Honor Center* v. *Hicks*, 509 U. S. 502, 515 (1993) ("[W]e think it generally undesirable, where holdings of the Court are not at issue, to dissect the sentences of the United States Reports as though they were the United States Code").

the date the judge signed it but not necessarily the date on which the order was entered. Bowles's lawyer therefore could not tell from reading the order, which he received by mail, whether it was entered the day it was signed. Nor is the possibility of delayed entry merely theoretical: the District Court's original judgment in this case, dated July 10, 2003, was not entered until July 28. See App. 11 (District Court docket). According to Bowles's lawyer, electronic access to the docket was unavailable at the time, so to learn when the order was actually entered he would have had to call or go to the courthouse and check. See Tr. of Oral Arg. 56–57. Surely this is more than equity demands, and unless every statement by a federal court is to be tagged with the warning "Beware of the Judge," Bowles's lawyer had no obligation to go behind the terms of the order he received.

I have to admit that Bowles's counsel probably did not think the order might have been entered on a different day from the day it was signed. He probably just trusted that the date given was correct, and there was nothing unreasonable in so trusting. The other side let the order pass without objection, either not caring enough to make a fuss or not even noticing the discrepancy; the mistake of a few days was probably not enough to ring the alarm bell to send either lawyer to his copy of the federal rules and then off to the courthouse to check the docket.[9] This would be a different case if the year were wrong on the District

_____

[9] At first glance it may seem unreasonable for counsel to wait until the penultimate day under the judge's order, filing a notice of appeal being so easy that counsel should not have needed the extra time. But as Bowles's lawyer pointed out at oral argument, filing the notice of appeal starts the clock for filing the record, see Fed. Rule App. Proc. 6(b)(2)(B), which in turn starts the clock for filing a brief, see Rule 31(a)(1), for which counsel might reasonably want as much time as possible. See Tr. of Oral Arg. 6. A good lawyer plans ahead, and Bowles had a good lawyer.

Court's order, or if opposing counsel had flagged the error. But on the actual facts, it was reasonable to rely on a facially plausible date provided by a federal judge.

I would vacate the decision of the Court of Appeals and remand for consideration of the merits.