# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 26, 2014

No. 13-70002
consolidated with
No. 13-70006

Lyle W. Cayce
Clerk

LOUIS CASTRO PEREZ,

Petitioner-Appellant

v.

WILLIAM STEPHENS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee

_____

LOUIS CASTRO PEREZ,

Petitioner-Appellee

v.

WILLIAM STEPHENS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellant

Appeals from the United States District Court
for the Western District of Texas

No. 13-70002 cons w/ No. 13-70006

Before JONES, DENNIS, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

A jury convicted Louis Perez of capital murder for the killings of his ex-girlfriend, her roommate, and the roommate's nine-year-old daughter, and he was sentenced to death.[1] The Texas Court of Criminal Appeals ("CCA") affirmed his conviction and sentence on direct appeal, and subsequently denied his petition for writ of habeas corpus. Perez filed a complaint seeking a writ of habeas corpus in the federal district court after exhausting his state-court remedies pursuant to 28 U.S.C. § 2254 (which is part of the Antiterrorism and Effective Death Penalty Act or "AEDPA"). The magistrate judge issued a Report and Recommendation denying Perez's habeas claims, which the district court adopted in full. The district court then denied Perez's request for a certificate of appealability ("COA").[2]

As more fully discussed below, allegedly without consulting Perez, his attorney decided not to file a timely appeal. Upon motion, the district court vacated and reentered its judgment pursuant to Federal Rule of Civil Procedure 60(b)(6), thereby allowing Perez to file an appeal within thirty days of the reentered judgment, which he did. In a case designated Case No. 13-70006, the Director of the Texas Department of Criminal Justice's Correctional Institutions Division ("Director") appealed from the district court's grant of Perez's motion to vacate and reenter judgment and subsequently filed a "Motion to Dismiss Appeal for Want of Jurisdiction" with this court, which we ordered carried with

---

[1] The facts underlying the conviction are not helpful to understanding this appeal's disposition. A complete recitation of the facts is available in the magistrate judge's Report and Recommendation. *See Perez v. Quarterman*, No. A-09-CA-081 LY, 2011 U.S. Dist. LEXIS 149275 (W.D. Tex. Dec. 29, 2011).

[2] Accordingly, we refer to the magistrate judge's report as that of the district court.

2

No. 13-70002 cons w/ No. 13-70006

the case.    In Case No. 13-70002, Perez appealed the reentered judgment, requesting a COA on a number of grounds.

We GRANT the Director's motion, VACATE the Civil Rule 60(b)(6)[3] order and reentered judgment (therefore leaving in place the original March 27, 2012 judgment), and DISMISS Perez's appeal (No. 13-70002) for want of jurisdiction.

## I.  Background

The district court entered judgment denying the application for writ of habeas corpus and a COA on March 27, 2012.  Accordingly, the deadline to file notice of appeal was April 26, 2012.  *See* FED. R. APP. P. 4(a)(1)(A).  Perez's attorney, Sadaf Khan, received notice of the order the same day judgment was entered, but, after conducting research, affirmatively decided not to file an appeal.  Khan did not notify Perez or the consulting attorney, Richard Burr, of the judgment in time to timely file a notice of appeal, nor did she consult with them about whether to file an appeal.  In other words, Khan never obtained Perez's agreement to waive an appeal.  Burr learned of the judgment after the deadline to timely appeal had passed, and he informed Khan that she needed to file an appeal as a matter of course.  Accordingly, on June 25, 2012, Khan moved to reopen the time to file a notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(6).  The district court denied the motion, finding that Khan received notice of the judgment when it was entered and adding that she missed the May 29, 2012 deadline to file an Appellate Rule 4(a)(5) motion to extend.  *See* FED. R. APP. P. 4(a)(5).

Perez secured new counsel who subsequently filed Appellate Rule 4(a)(5) and 4(a)(6) motions, as well as a motion under Civil Rule 60(b)(6), arguing that Perez missed the deadline because Khan abandoned him.  On December 18,

---

[3]  To avoid confusion, we will use the term "Appellate Rule __" to refer to a specific Federal Rule of Appellate Procedure and "Civil Rule __" to refer to a specific Federal Rule of Civil Procedure.

2012, the district court—finding that Khan had abandoned Perez—entered judgment granting the Civil Rule 60(b)(6) motion. It then directed the clerk to reenter the March 27 judgment so that Perez could timely appeal. The court noted that it otherwise would have granted Perez's Appellate Rule 4(a)(6) motion. On January 16, 2013, Perez timely appealed the district court's reentered judgment; the Director also timely appealed the district court's grant of Civil Rule 60(b)(6) relief.

## II. Applicability of Civil Rule 60(b)(6)

"[We] review[] a district court's decision to grant or deny relief under [Civil] Rule 60(b) for abuse of discretion." *Flowers v. S. Reg'l Physician Servs., Inc.*, 286 F.3d 798, 800 (5th Cir. 2002). "'A district court abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 638 (5th Cir. 2005) (quoting *Kennedy v. Tex. Utils.*, 179 F.3d 258, 265 (5th Cir. 1999)).

The first question before us is a simple one, though the answer is less so. Does the district court have the power to allow an otherwise untimely appeal by using Civil Rule 60(b)(6) to reenter a judgment solely in order to permit such an appeal to become timely?[4] If the answer to the question is "yes," then we must examine under what circumstances the district court could do so.[5] If the answer

---

[4] The district court ruled in the alternative that it would have granted the Appellate Rule 4(a)(6) motion, despite its earlier conclusion that this rule did not apply because Khan received timely notice. Perez does not argue that Appellate Rule 4(a)(6) would provide an alternate basis to find his appeal timely. This rule does not cover an attorney's decisions that lead to an untimely appeal. *See Resendiz v. Dretke*, 452 F.3d 356 (5th Cir. 2006). Even if Appellate Rule 4(a)(6) were an available source of relief in a case such as this one, as suggested by the dissenting opinion, it permits only a fourteen-day reopening of the time for appeal. This appeal was filed twenty-eight days after the district court's Civil Rule 60(b)(6) order. Thus, Appellate Rule 4(a)(6) does not aid Perez here.

[5] Because we answer this question "no," we have no occasion to address what the parameters of "attorney abandonment" are. We note, however, that Khan's decision not to

No. 13-70002 cons w/ No. 13-70006

is "no," then the district court lacked the power to do what it did, and we must vacate the order. The answer to the question requires consideration of some history. Prior to 1991, we allowed the use of Civil Rule 60(b)(6) to circumvent Appellate Rule 4(a) in cases where the clerk failed to send the required notice to the parties that a judgment had been entered. *See Smith v. Jackson Tool & Die, Inc.*, 426 F.2d 5 (5th Cir. 1970). In *Smith*, we stated that while

> [w]e are fully aware that various cases have held that a motion to vacate cannot be granted for the sole purpose of extending the time for appeal nor can it be invoked as a substitute for appeal. . . . [W]e must also recognize that where the net result of adhering to the letter of the rules of procedure is to thwart rather than to promote justice, the Court must be wary of their rigid application.

*Id.* at 7–8.

In 1991, however, Appellate Rule 4(a) was amended specifically to allow the district court to re-open the appeal time when the moving party does not receive notice under Civil Rule 77(d), which provides for clerks to give parties notice of judgments. FED. R. APP. P. 4(a)(6). That same year, 28 U.S.C. § 2107, which provides the statutory time frame for civil appeals, was amended to allow extensions of time in the same circumstances as those encompassed by Appellate Rules 4(a)(5) and 4(a)(6).

Following these amendments, we held that Civil Rule 60(b)(6) is no longer available in cases that are analogous to *Smith*. *See Matter of Jones*, 970 F.2d 36, 37–39 (5th Cir. 1992) (affirming the denial of a Civil Rule 60(b)(6) motion to vacate and reinstate the judgment where there was no notice because the appellants failed to meet the requirements of Appellate Rule 4(a)(6)); *see also Vencor Hosps. v. Std. Life & Accident Ins. Co.*, 279 F.3d 1306, 1312 (11th Cir.

---

appeal, while not hers to make, was, according to her, based on research and her conclusion that such an appeal would not be "viable" and would detract from her strategy of pursuing an "actual innocence" claim.

2002) (same); *Zimmer St. Louis, Inc. v. Zimmer Co.*, 32 F.3d 357 (8th Cir. 1994) (same). Prior to 1991, we had decided some cases that hinted (without holding) that it was conceivable that a situation could exist that would allow using Civil Rule 60(b) to extend the time for appeal even in situations not governed by *Smith*. *See United States v. O'Neil*, 709 F.2d 361, 373 (5th Cir. 1984) (stating "[e]xcept in truly extraordinary cases, Rule 60(b) relief should not be used to extend the time for appeal," and thus implicitly suggesting there might be such a "truly extraordinary case");[6] *see also In re Air Crash at Dall./Fort Worth Airport*, 852 F.2d 842, 844 (5th Cir. 1988) (citing 11 WRIGHT & MILLER § 2864 at 214–15). After the statutory and rule changes of 1991, however, our decisions no longer contained even such "hints."[7]

Instead, in 2002, we decided *Dunn v. Cockrell*, 302 F.3d 491 (5th Cir. 2002). In *Dunn*, we affirmed a district court's denial of a habeas petitioner's Civil Rule 60(b)(1) motion seeking to vacate the original judgment so that he could timely appeal, holding that "[R]ule 60(b) cannot be used to circumvent the limited relief available under Federal Rule of Appellate Procedure 4(a)(5), which advances the principle of protecting the finality of judgments." *Id.* at 492–93 (citation omitted). The language used in *Dunn* makes it particularly clear that where the sole purpose of a Civil Rule 60(b) motion is "to achieve an extension of the time in which to file a notice of appeal, it must fail." 302 F.3d at 493; *see also O'Neil*, 709 F.2d at 373 ("[W]here . . . the [Civil] Rule 60(b) motion . . . asks

---

[6] *O'Neil*'s actual holding was that the "appeal periods in FED. R. APP. P. 4 are mandatory and jurisdictional. . . [Civil] Rule 60(b) cannot be used to circumvent its procedures . . . . This is particularly so where . . . the [Civil] Rule 60(b) motion is made after time for appeal has expired . . . [and] asks only that the order be vacated and reentered." (citations omitted). 709 F.2d at 373.

[7] One post-1991 case mentioned in a passing footnote that "[w]e have recognized that this rule may yield in truly extraordinary cases." *Latham v. Wells Fargo Bank, N.A.*, 987 F.2d 1199, 1203 n.7 (5th Cir. 1993) (citing *O'Neil*, 709 F.2d at 373).

only that the order be vacated and reentered. . . . the [Civil] Rule 60(b) motion is avowedly being used *only* to extend the time for appeal. It hence squarely collides with [Appellate] Rule 4(a)(5).").[8]

Following our decision in *Dunn*, the Supreme Court held in *Bowles v. Russell*, 551 U.S. 205, 214 (2007), that the "timely filing of a notice of appeal in a civil case is a jurisdictional requirement." The Court explained that courts lacked power to carve out equitable exceptions to Appellate Rule 4(a) because the deadlines to appeal are jurisdictional statutory requirements under 28 U.S.C. § 2107. *Id.* *Bowles* unequivocally states that "the timely filing of a notice of appeal in a civil case is a jurisdictional requirement. Because this Court has no authority to create equitable exceptions to jurisdictional requirements, use of the 'unique circumstances' doctrine is illegitimate." *Id.* at 214.

The strong language in *Bowles*, while not referring specifically to Civil Rule 60(b), does not permit appellate courts to create exceptions to circumvent the appellate deadlines as set forth in Appellate Rule 4(a) and § 2107. This is particularly true because Appellate Rule 4 "carries § 2107 into practice." *Id.* at 208. According to 28 U.S.C. § 2107(a), a party must appeal within 30 days of the entry of judgment, and district courts have limited authority to grant an extension. The limited exceptions stated in § 2107 are present in Appellate Rule 4; however, there is no "extraordinary circumstances" or similar exception. In fact, 28 U.S.C. § 2107 has been amended twice since the Supreme Court decided *Bowles*. Neither amendment attempts to add an exception for "extraordinary" or "unique" circumstances, suggesting that Congress does not intend for any exceptions, other than the ones already codified, to be used by parties to avoid

---

[8] Although *Dunn* addressed Civil Rule 60(b)(1), its reasoning was not limited to subpart 1. 302 F.3d at 493 (where "sole purpose" of motion is not to attack underlying judgment but rather to extend the time for appeal, "it must fail"). The reasoning is equally applicable to subpart 6. *See also* fn.8, *infra*.

strict compliance with appellate deadlines. Therefore, using Civil Rule 60(b)(6) to circumvent the exceptions codified in 28 U.S.C. § 2107 runs afoul of *Bowles*'s clear language that courts cannot create exceptions to jurisdictional requirements that are statutorily based. *See* 551 U.S. at 212–14.

Perez and the dissenting opinion point to recent Supreme Court cases using equitable rules in death penalty cases to avoid otherwise harsh results occasioned by improper attorney conduct. In *Maples v. Thomas*, 132 S. Ct. 912, 917 (2012), the Supreme Court held that attorney abandonment constitutes an extraordinary circumstance that can be sufficient "cause" to relieve a federal habeas petitioner from the consequences of a procedural default in state court. There, during the state post-conviction phase, the defendant's pro bono attorneys left their employment at their law firm and discontinued representation of the defendant without informing either the defendant or the court. *Id.* at 919. No other attorney at the firm took responsibility for the case in any way, and local counsel did not act upon receiving a copy of the dismissal. *Id.* at 919–20. As a result, the time to file an appeal in the state court expired. *Id.* at 920. The district court determined that the procedural error precluded federal habeas consideration, and the Eleventh Circuit affirmed. *Id.* The Supreme Court reversed, distinguishing attorney abandonment, which satisfies the "cause" requirement, from attorney negligence, which does not. *Id.* at 922–23; *see also Martinez v. Ryan*, 132 S. Ct. 1309 (2012) (creating an equitable rule to avoid a procedural default in certain defined situations caused by ineffective assistance of counsel in state proceedings).

The Supreme Court cases Perez and the dissenting opinion cite do not involve exceptions to statutory limits on appellate jurisdiction; they address equitable exceptions to judge-created procedural bars or non-jurisdictional statutes. *See Holland v. Florida*, 560 U.S. 631 (2010) (concluding that AEDPA statute of limitations is not jurisdictional and, therefore, concluding that

equitable tolling of the AEDPA limitations period was permissible in the circumstance of attorney abandonment).  While the dissenting opinion would read *Bowles* as limited to cases where Appellate Rule 4(a)(6) would govern, its language is not so limited, and its reasoning rests on the statutory nature of these jurisdictional limits under § 2107.

More importantly, even assuming *arguendo* we were convinced that the current Court would not (or should not) continue to follow *Bowles*, we are not free to disregard *Bowles*.  *See Ballew v. Cont'l Airlines*, 668 F.3d 777, 782 (5th Cir. 2012).  "We are a strict *stare decisis* court and are in no position to challenge the statutory construction utilized by the Supreme Court . . . .  The Supreme Court has sole authority to overrule its own decisions . . . ."  *Id.* (citations and internal quotation marks omitted).  In other words, we do not "read tea leaves;" we follow the law as it is, respecting the Supreme Court's singular role in deciding the continuing viability of its own precedents.

Other circuits are in accord, with one exception.  *See, e.g.*, *Lacour v. Tulsa City-Cnty. Jail*, 517 F. App'x 617, 618–19 (10th Cir. 2013) (unpublished) (holding that Civil Rule 60(b) motions cannot toll the time for filing a notice of appeal because, under *Bowles*, the timely filing requirement is mandatory and jurisdictional)[9]; *Cumberland Mut. Fire Ins. Co. v. Express Prod., Inc.*, 529 F. App'x 245, 252 (3d Cir. 2013) (unpublished) ("It is well established that [Civil] Rule 60 is not a proper vehicle for extending the time to file an appeal that has been rendered untimely by the expiration of the thirty-day time window provided by [Appellate] Rule 4(a)." (citing *Bowles*, 551 U.S. at 206–07)); *Hall v.*

---

[9]  Contrary to the dissenting opinion's suggestion, *Lacour* does not hold that "a petitioner may rely on [Civil] Rule 60(b) to extend the time for filing an appeal."  Instead, it held that Lacour, who was challenging the substance of the judgment, not just seeking reinstatement of his appellate timetable, could not challenge the underlying judgment on appeal because he did not file a timely Civil Rule 59 motion.  517 F. App'x at 619.  Instead, the appeal was timely only as to the Civil Rule 60(b) motion's denial.  The court held that the district court did not abuse its discretion in denying Civil Rule 60(b) relief.

No. 13-70002 cons w/ No. 13-70006

*Scutt*, 482 F. App'x 990, 990–91 (6th Cir. 2012) (unpublished) (same); *In re Sealed Case (Bowles)*, 624 F.3d 482, 486–87 (D.C. Cir. 2010) (same);[10] *see also White v. Jones*, 408 F. App'x 293, 295–96 (11th Cir. 2011) (unpublished) (While refusing to make a decision on whether Civil Rule 60(b)(6) could ever be used to circumvent Appellate Rule 4(a), the court stated in dicta that *Bowles* likely means that the court would be deprived of jurisdiction if the petitioner failed to comply with a statutory deadline (citing *Dunn*, 302 F.3d at 492)).

The exception is the Ninth Circuit. In *Mackey v. Hoffman*, 682 F.3d 1247 (9th Cir. 2012), it concluded that Civil Rule 60(b)(6) could be used to vacate and reenter judgment where attorney abandonment was found. The Ninth Circuit asserted that its decision does not run afoul of *Bowles* because "Mackey is not receiving relief pursuant to [Appellate] Rule 4(a)(6)." *Id.* at 1253. However, the Ninth Circuit did not address the fact that *Bowles* permitted no equitable exceptions and used mandatory, unequivocal language when referring to the statutory grant of civil appellate jurisdiction. Nor does it address the fact that Appellate Rule 4(a)(5) exists and encompasses "excusable neglect" and "good cause," consistently with § 2107, while a separate "extraordinary circumstances" exception would be inconsistent with § 2107.[11]

---

[10] We also note the persuasive reasoning of two factually similar district court cases from outside our circuit. *Garrett v. Presesnik*, No. 2:09-CV-11076, 2012 U.S. Dist. LEXIS 85411, at *9–11 (E.D. Mich. May 4, 2012) (unpublished) (denying petitioner's Civil Rule 60(b)(6) motion seeking relief to file a timely notice of appeal where petitioner's counsel for the habeas proceedings failed to file the notice of appeal, despite being aware that the petitioner wanted to appeal the denial because, under *Bowles*, Appellate Rule 4(a)'s time limits are "mandatory and jurisdictional," and therefore Civil Rule 60(b) cannot be used to escape Appellate Rule 4(a)'s requirements to re-open the time for appeal); *Joyner v. United States*, No. 3:06-00016, 2011 U.S. Dist. LEXIS 64790, at *6–7 (D.S.C. June 17, 2011) (unpublished) (denying a petitioner's Civil Rule 60(b)(6) motion because, under *Bowles*, the court may not create equitable exceptions to jurisdictional requirements)

[11] Alternatively, one could say that attorney "abandonment," if such occurred, would constitute "good cause" for the failure to timely file such that this circumstance is encompassed by Appellate Rule 4(a)(5) exception for "good cause." Perez's contrary arguments run afoul of *Dunn*.

No. 13-70002 cons w/ No. 13-70006

In this case, Perez is solely using a Civil Rule 60(b) motion as a means of achieving an untimely appeal. He does not claim he was denied a "full and fair hearing before the district court nor [does he] seek[] by the ruling to have the district court alter its ruling." *Dunn*, 302 F.3d at 493 (citation and internal quotation marks omitted). We conclude under Supreme Court and our precedents that the district court lacked the power to circumvent the rules for timely appeals in the manner it did. Accordingly, we conclude that we must VACATE the order granting Civil Rule 60(b)(6) relief and reentering the judgment.[12] That leaves the March 2012 judgment as the "live" judgment as to which Perez's appeal is, admittedly, untimely. As a result, we GRANT the Director's motion to dismiss 13-70002, Perez's appeal, for want of jurisdiction.

Civil Rule 60(b)(6) order VACATED (Case No. 13-70006); Perez's appeal DISMISSED (Case No. 13-70002).

---

[12] Our ruling in no way implies that it would be proper for a lawyer to fail to advise a client of an adverse judgment and the right to appeal. *Cf. Burt v. Titlow*, 134 S. Ct. 10, 18 (2013) (holding that the Court's decision declining to set aside state court finding that a lawyer was not ineffective did not exonerate the lawyer from the fact that he "may well have violated the rules of professional conduct"). The decision to waive an appeal is for the client. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT R. 1.02 (client controls general objectives and methods of representation); *See also* TEX. DISCIPLINARY R. PROF'L CONDUCT R.1.03 (requiring communication with and explanations to a client). In consideration of our duties under Canon 3(B)(5) of the Code of Conduct for United States Judges and recognizing that we do not have all the facts regarding Perez's attorneys' conduct, we raised this issue with both sides' attorneys at oral argument. In a supplemental brief following oral argument, Perez's new attorneys explained that the prior attorney's conduct appears to have been a "one-time occurrence attributable to her medical condition" such that they concluded that referral to disciplinary authorities was not appropriate.

JAMES L. DENNIS, Circuit Judge, dissenting.

I respectfully dissent.

Ordinarily, "the attorney is the prisoner's agent, and under 'well-settled principles of agency law,' the principal bears the risk of negligent conduct on the part of his agent." *Maples v. Thomas*, 132 S. Ct. 912, 922 (2012). However, the Supreme Court has explained that "[a] markedly different situation is presented[] . . . when an attorney *abandons* his client without notice, and thereby occasions the default." *Id.* (emphasis added). "Having severed the principal–agent relationship, an attorney no longer acts, or fails to act, as the client's representative." *Id.* at 922-23. Rather, "[c]ommon sense dictates that a litigant cannot be held constructively responsible for the conduct of an attorney who is not operating as his agent in any meaningful sense of that word." *Id.* at 923 (quoting *Holland v. Florida*, 130 S. Ct. 2549, 2568 (2010) (Alito, J., concurring). Therefore, "[u]nder agency principles, a client cannot be charged with the acts or omissions of an attorney who has abandoned him. Nor can a client be faulted for failing to act on his own behalf when he lacks reason to believe his attorneys of record, in fact, are not representing him." *Id.* at 924.

As the majority opinion states, the district court denied Perez relief and further denied him a certificate of appealability ("COA"). At that point, time began to elapse for Perez to move for a COA in this court. The majority, in essence, concludes that Perez failed to do so in a timely manner, precluding further review of his conviction and sentence. But to say that *Perez* failed to act in a timely manner is to elide a crucial point. Perez's attorney, Sadaf Khan ("Khan"), timely received notice of the district court's decision denying Perez relief but she silently, autonomously, and independently chose to take no further action in Perez's case. Without informing or conferring with anyone, including Perez, she deliberately let the time to move for a COA

12

expire.   Khan egregiously breached her duty to Perez as his attorney by abandoning him without notice and causing him to lose his right to appeal.

Attorney abandonment, the Supreme Court has indicated, is sufficient to constitute the "extraordinary circumstances" necessary to trigger relief from judgment under Federal Rule of Civil Procedure 60(b)(6).  *See id.* at 917, 927 (2012); *Holland*, 130 S. Ct. at 2564; *see also Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005).  Accordingly, the district court did not abuse its discretion when, considering Khan's serious breach of ethical duty and abandonment of Perez at the precise moment when he crucially needed her counsel and representation, it determined that relief from judgment was warranted and reentered the judgment denying Perez habeas relief in order to permit him, aided by new counsel, to timely file a notice of appeal.   Holding Perez responsible for Khan's gross breach of duty is a manifest miscarriage of justice that is not compelled by any precedent of the Supreme Court or this court and erroneously creates a circuit split.  *See Mackey v. Hoffman*, 682 F.3d 1247, 1252-53 (9th Cir. 2012).

Nor does *Bowles v. Russell*, 551 U.S. 205 (2007), bar granting Perez relief.  In *Bowles*, the Supreme Court held that the time periods contained in Federal Rule of Appellate Procedure 4(a)(6) are "mandatory and jurisdictional."  551 U.S. at 209.  Rule 4(a)(6) permits the district court to reopen the time to file an appeal if the moving party demonstrates that he did not receive notice of the judgment to be appealed under Federal Rule of Civil Procedure 77(d).  FED. R. APP. P. 4(a)(6).  Perez, however, seeks relief pursuant to Federal Rule of Civil Procedure 60(b)(6) to cure the problem caused when Khan abandoned him.  By contrast, at no point in *Bowles* did the petitioner allege that he was entitled to relief because he had been abandoned by his attorney.  Moreover, Perez has not argued on appeal that he failed to receive notice of the judgment under Rule 77(d), so *Bowles* presents no bar

and does not dictate today's unfortunate outcome. *Cf. Mackey*, 682 F.3d at 1253.

## BACKGROUND

On March 27, 2012, the district court entered judgment denying Perez habeas relief and further denying Perez a COA. Accordingly, the deadline to file a notice of appeal was April 26, 2012. *See* FED. R. APP. P. 4(a)(1)(A). According to Khan's affidavit, she received notice of the district court's order the same day that the district court denied Perez relief but determined, apparently without consulting Richard Burr ("Burr"), the consulting attorney,[1] *or her client*, that an appeal would not be successful.[2] In other words, Khan knew of the district court's ruling, unilaterally chose to do nothing, and intentionally and silently allowed Perez's right to request a COA expire by failing to file a notice of appeal by April 26, 2012. In fact, between March 2012, when the district court rendered its decision, and June 2012, Khan did not talk to Burr or Perez at all. The two attorneys spoke only after Burr learned of the district court's March order and called Khan. On June 25, 2012, Khan sent Perez a letter informing him that she had not timely filed an appeal on his behalf.

---

[1] As the consulting attorney, Burr assisted Khan in representing Perez, with Khan asking Burr case-specific questions from time to time and Burr providing his counsel in response. Burr consulted on Perez's case as part of his work with the Texas Habeas Assistance and Training Project ("the TX HAT Project"). The TX HAT Project is composed of experienced attorneys, each of whom maintains a private practice and directly represents federal capital habeas petitioners from Texas. Additionally, these attorneys consult with counsel appointed to represent Texas capital habeas petitioners, log between 400 and 1000 hours per year in this capacity, and consult on up to 150 cases at any given time. Because of this, Burr explained that he was not able to meaningfully consult on every case—and that he could not force counsel to consult him on every case—and that he would instead focus on the subset of cases in which counsel actively sought his advice.

[2] Burr was not the counsel of record in the case and so he could not sign up to receive PACER notifications. Consequently, he did not receive notice of the district court's judgment. However, even if he had, because he was not counsel of record, he possessed no authority to act on Perez's behalf

Thereafter, Burr instructed Khan that she needed to file a notice of appeal; after all, he said, the decision whether to appeal was not hers to make. Accordingly, on June 25, 2012, Khan moved to reopen the time to file a notice of appeal. *See* FED. R. APP. P. 4(a)(6).[3] The district court denied the motion, finding that *Khan* had received notice of the judgment when it was entered and that she had missed the May 29, 2012 deadline to file a Rule 4(a)(5) motion to extend. *See* FED. R. APP. P. 4(a)(5).[4]

Khan withdrew as counsel and Perez secured new counsel who subsequently filed Rule 4(a)(5) and 4(a)(6) motions, as well as a motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b)(6), arguing that Perez missed the deadline because Khan had abandoned him. On December 18, 2012, the district court—finding that Khan had abandoned Perez—entered judgment granting the Rule 60(b)(6) motion and directed the clerk to reenter the March 27 judgment so that Perez could timely appeal. The court noted that it otherwise would have granted Perez's Rule 4(a)(6) motion to reopen the time to file his appeal. On January 16, 2013, Perez timely appealed the district court's fresh judgment denying habeas relief and determining that a COA should not issue. The state cross appealed the district court's grant of Perez's motion to vacate and reenter judgment the next day and later moved in this court to dismiss Perez's appeal for want of jurisdiction.

---

[3] That rule permits the district court to "reopen the time to file an appeal for a period of 14 days after the date when its order to reopen is entered" only if (1) "the court finds that the moving party did not receive notice under Federal Rule of Civil Procedure 77(d) of the entry of the judgment or order," (2) "the motion is filed within 180 days after the judgment or order is entered or within 14 days after the moving party receives notice . . . , whichever is earlier," and (3) "the court finds that no party would be prejudiced.

[4] That rule permits the district court to "extend the time to file a notice of appeal if[] . . . a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires."

## DISCUSSION

### I.

Federal Rule of Civil Procedure 60(b)(6) permits a district court to relieve a party from a final judgment for "any . . . reason that justifies relief." FED. R. CIV. P. 60(b)(6). The Supreme Court has explained that only "extraordinary circumstances" justify 60(b)(6) relief. *Gonzalez*, 545 U.S. at 535. Accordingly, we must determine (1) whether attorney abandonment that results in a petitioner's failure to timely file an appeal constitutes "extraordinary circumstances" sufficient to justify relief under Rule 60(b)(6) and (2) whether Khan in fact abandoned Perez. The Supreme Court and the Ninth Circuit have answered the first question in the affirmative, and the facts of this case unquestionably indicate that Khan abandoned Perez right when he needed her most. *See Maples*, 132 S. Ct. at 917, 927; *Holland*, 130 S. Ct. at 2564; *Mackey*, 682 F.3d at 1252-53.

### A.

In *Maples v. Thomas*, the Supreme Court held that attorney abandonment constitutes sufficient "cause" to relieve a habeas petitioner, Maples, from the bar to federal review caused by procedural default in state court. 132 S. Ct. at 917; *see also id.* at 927 (describing Maples's abandonment as "extraordinary circumstances"). Maples's pro bono attorneys, during the state postconviction proceedings, left their employment at their law firm and discontinued their representation of the petitioner without informing either the petitioner or the court. *Id.* at 916-17, 919. No other attorney at the firm "entered an appearance on Maples'[s] behalf, moved to substitute counsel, or otherwise notified the court of any change in [the defendant's] representation." *Id.* at 919.

In May 2003, the state court denied Maples's habeas application. *Id.* at 917. "Notice of the court's order were posted to the New York attorneys at the

address of the law firm with which they had been associated." *Id.* However, "[t]hose postings were returned, unopened, to the trial court clerk, who attempted no further mailing." *Id.* "With no attorney of record in fact acting on Maples'[s] behalf, the time to appeal ran out." *Id.* Maples subsequently filed a federal habeas application, but the district court determined that the failure to appeal the trial court's ruling in the state habeas proceeding precluded federal habeas review, and the Eleventh Circuit agreed. *See id.* The Supreme Court, however, reversed, distinguishing between mere "[n]egligence on the part of a prisoner's postconviction attorney[, which] does not qualify as 'cause'" due to the principal-agent relationship between a prisoner and his attorney, and abandonment, which does. *Id.* at 922. Contrasting the former with the latter, the Court explained:

> A markedly different situation is presented[] . . . when an attorney *abandons* his client without notice, and *thereby occasions the default*. Having *severed* the principal–agent relationship, an attorney no longer acts, or fails to act, as the client's representative. His acts or omissions therefore "cannot fairly be attributed to [the client]."

*Id.* at 922-23 (second alteration in original) (emphasis added) (citation omitted) (quoting *Coleman v. Thompson*, 501 U.S. 722, 753 (1991)); *see also Holland*, 130 S. Ct. at 2564 (concluding that attorney abandonment may constitute an "extraordinary circumstance" justifying equitable tolling under 28 U.S.C. § 2244(d)); *id.* at 2568 (Alito, J., concurring) ("Common sense dictates that a litigant cannot be held constructively responsible for the conduct of an attorney who is not operating as his agent in any meaningful sense of that word."). Thus, the *Maples* Court held that

> under agency principles, a client cannot be charged with the acts or omissions of an attorney who has abandoned him. Nor can a client be faulted for failing to act on his own behalf when he lacks reason to believe his attorneys of record, in fact, are not representing him.

132 S. Ct. at 924.

Ultimately, the Court concluded that Maples had shown that his attorneys had abandoned him. *See id.* at 924-27. Maples's putative representatives had left their jobs at the firm and had done so without notifying Maples and without withdrawing as counsel of record as required by the relevant local rules. *Id.* at 924. And because the attorneys continued to be listed as counsel of record, Maples was not entitled to receive notice of any order. *Id.* at 925.[5] Moreover, the Court underscored the grave conflict of interest presented by attorneys from the same firm attempting to represent Maples following the procedural default:

> Following the default, the firm's interest in avoiding damage to its own reputation was at odds with Maples'[s] strongest argument—*i.e.*, that his attorneys had abandoned him, therefore he had cause to be relieved from the default. Yet [the firm] did not cede Maples'[s] representation to a new attorney, who could have made Maples'[s] abandonment argument plain to the Court of Appeals. Instead, the firm represented Maples through briefing and oral argument in the Eleventh Circuit, where they attempted to cast responsibility for the mishap on the clerk of the Alabama trial court.

*Id.* at 925 n.8. Accordingly, the Supreme Court concluded that "[t]here was indeed cause to excuse Maples'[s] procedural default." *Id.* at 927.

> Through no fault of his own, Maples lacked the assistance of any authorized attorney during the 42 days Alabama allows for noticing an appeal from a trial court's denial of postconviction relief. As just observed, he had no reason to suspect that, in reality, he had been reduced to pro se status. Maples was disarmed by extraordinary circumstances quite beyond his control. He has shown ample cause, we hold, to excuse the procedural default into which he was trapped when counsel of record abandoned him without a word of warning.

---

[5] *See* ALA. R. CRIM. P. 34.5 ("[U]pon the entry of any order in a criminal proceeding made in response to a motion, . . . the clerk shall, without undue delay, furnish all parties a copy thereof by mail or by other appropriate means."); ALA. R. CRIM. P. 34.4 ("[W]here the defendant is represented by counsel, service shall be made upon the attorney of record.").

*Id.*

The Ninth Circuit has applied *Maples*'s reasoning to grant relief from judgment under Rule 60(b)(6) in a situation materially indistinguishable from the present case. *See Mackey*, 682 F.3d at 1252-53. In *Mackey*, after the district court had denied the petitioner's habeas application on the merits, Mackey's attorney neither notified him nor filed a notice of appeal, despite having inaccurately informed the petitioner that he was awaiting a trial date. *Id.* at 1248-49.[6] Consequently, the time to file an appeal had lapsed, and the district court denied a Rule 60(b)(6) motion to vacate, determining that it lacked discretion to do so. *Id.* at 1250.

Like Supreme Court in *Maples,* the *Mackey* court distinguished between negligence and abandonment. *Id.* at 1253. The court explained that the Ninth Circuit had previously held that gross negligence amounting to constructive abandonment could constitute extraordinary circumstances under Rule 60(b)(6). *Id.* at 1251 (citing *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1169-71 (9th Cir. 2002)). "Relief in such a case," the *Mackey* court explained, "is justified because gross negligence by an attorney, defined as 'neglect so gross that it is inexcusable,' 'vitiat[es] the agency relationship that underlies our general policy of attributing to the client the acts of his attorney.'" *Id.* (alteration in original) (quoting *Tani*, 282 F.3d at 1168, 1171). Thus, the Ninth Circuit held that "when a federal habeas petitioner has been inexcusably and grossly neglected by his counsel in a manner amounting to attorney abandonment in every meaningful sense that has jeopardized the petitioner's appellate rights, a district court may grant relief pursuant to Rule 60(b)(6)." *Id.* at 1253.

---

[6] Evidently, Mackey's attorney declined—or refused—to take any further action because he had not been paid. *See id.* at 1249

As with the attorneys in *Maples*, the Ninth Circuit concluded that Mackey's attorney had failed to observe the relevant local rules requiring him to seek permission to withdraw as counsel of record. *Id.* at 1253.

> Because Grim failed to notify the court of his intention to withdraw, Mackey was deprived of the opportunity to proceed pro se and to personally receive docket notifications from the court. As a result, Mackey, an indigent prisoner who . . . believed that his attorney was continuing to represent him, was wholly unaware that the district court had denied his § 2254 petition.

*Id.* (citation omitted). However, because the district court had stated that "if it possessed the discretion to vacate and reenter the judgment in order to allow petitioner the opportunity to appeal, [it] would do so," the *Mackey* court, having concluded that the district court possessed such discretion, remanded the case to the district court to determine, as a factual matter, whether Mackey's attorney had in fact abandoned him. *Id.* at 1254 (internal quotation marks omitted).[7]

In sum, the Supreme Court has said that attorney abandonment constitutes the kind of extraordinary circumstance that justifies relief from judgment. *See Maples*, 123 S. Ct. at 917; *Holland*, 130 S. Ct. at 2552, 2562-63; *id.* at 2568 (Alito, J., concurring). Applying *Maples*, the Ninth Circuit, faced with facts nearly identical to those of the present case, held that attorney abandonment constitutes the kind of extraordinary circumstances necessary to trigger relief from judgment pursuant to Rule 60(b)(6). In light of this persuasive authority, based on materially indistinguishable circumstances, together with the Supreme Court's clear mandate in *Maples*, the district court correctly concluded that Perez may seek relief from

---

[7] The court explained that it was granting relief for attorney abandonment under Rule 60(b)(6) rather than for failure to receive notice under Rule of Appellate Procedure 4(a)(6). *Id.* Consequently, the court concluded that "[g]ranting relief to Mackey is not barred by *Bowles v. Russell*." *Id.* "Mackey," the court explained, "[was] seeking relief pursuant to Rule 60(b)(6) to cure a problem caused by attorney abandonment and not by a failure to receive Rule 77(d) notice." *Id*

judgment on the grounds that his attorney abandoned him without notice and caused him to lose his right to appeal.

**B.**

Khan's unilateral decision not to notify Burr or Perez of the district court's judgment and not to pursue an appeal therefrom was an egregious breach of the duties an attorney owes her client and thus constitutes abandonment, not mere negligence for which Perez would ordinarily be responsible. Khan knew of the district court's judgment but elected to do nothing and inform no one despite the fact that, under the relevant ethical rules, the decision not to appeal was not hers to make. *See, e.g.*, TEX. DISC. R. PROF. CONDUCT 1.02-1.03.[8] Of particular note is the commentary to Rule 1.02, which governs the scope and objectives of representation:

> Doubt about whether a client–lawyer relationship still exists should be clarified by the lawyer, preferably in writing, so that the client will not mistakenly suppose the lawyer is looking after the client's affairs when the lawyer has ceased to do so. For example, if a lawyer has handled a judicial or administrative proceeding that produced a result adverse to the client but has not been specifically instructed concerning pursuit of an appeal, *the lawyer should advise the client of the possibility of appeal* before relinquishing responsibility for the matter.

---

[8] *See also Holland*, 130 S. Ct. at 2564 (describing "fundamental canons of professional responsibility, which require attorneys to perform reasonably competent legal work, to communicate with their clients, to implement clients' reasonable requests, to keep their clients informed of key developments in their cases, and never to abandon a client"); Burr Aff. ¶ 19 (consulting attorney stating that "[i]n my more than 30 years of experience in post-conviction proceedings, I have seen exceedingly few instances in which habeas counsel have failed to forward a copy of a deadline-triggering judgment to a death penalty client, failed to consult with a client regarding the client's desire to appeal, and failed to take any action on behalf of a client during an extended period in which jurisdictional appellate deadlines are missed")

TEX. DISC. R. PROF. CONDUCT 1.02 cmt. 6 (emphasis added).[9] This Khan failed to do. Consequently, Khan's omissions effectively severed the principal–agent relationship. To hold Perez accountable for Khan's unilateral decision not to take an appeal would by contrary to the Supreme Court's directive that the acts and omissions of an attorney who, by abandoning her client, has severed the attorney–client relationship "'cannot fairly be attributed to [the client].'" *Maples*, 132 S. Ct. at 922-23 (alteration in original) (quoting *Coleman*, 501 U.S. at 753).

Not only did the decision whether to take an appeal belong to Perez, not Khan, but when Khan unilaterally made this decision for him, she exposed herself to a serious conflict of interest further underscoring the extent of the abandonment. *See Downs v. McNeil*, 520 F.3d 1311, 1314 (11th Cir. 2008) ("[U]nder fundamental tenets of agency law, a principal is not charged with an agent's actions or knowledge when the agent is acting adversely to the principal's interests."); *see also Maples*, 132 S. Ct. at 925 n.8. On discovering the seriousness of her error, Khan should have immediately ceded Perez's representation to new counsel who could have made Perez's strongest argument—that she had abandoned him—as soon as possible. That Khan instead moved, unsuccessfully, to reopen the time to file a notice of appeal

---

[9] *See, e.g.*, *Jones v. State*, 98 S.W.3d 700, 703 (Tex. Crim. App. 2003) ("[T]he attorney must ascertain whether the defendant wishes to appeal. The decision to appeal lies solely with the defendant, and the attorney's duty is to advise him as to the matters described above. . . . If the defendant decides to appeal, the attorney must ensure that written notice of appeal is filed with the trial court."); *Ex Parte Axel*, 757 S.W.2d 369, 374 (Tex. Crim. App. 1988) ("[T]rial counsel, retained or appointed, has the duty, obligation and responsibility to consult with and fully to advise his client concerning meaning and effect of the judgment rendered by the court, his right to appeal from that judgment, the necessity of giving notice of appeal and taking other steps to pursue an appeal, as well as expressing his professional judgment as to possible grounds for appeal and their merit, and delineating advantages and disadvantages of appeal."); *Brice v. Denton*, 135 S.W.3d 139, 149 (Tex. App. 2004) ("[I]n the absence of a limitation on the scope of appointed counsel's representation in the appointment order, or an order granting appointed counsel's motion to withdraw, we assume that counsel has a continuing obligation to represent a client until the client no longer desires an appointed attorney to appeal the matter.").

underscores this conflict.   Why would an attorney argue that she had abandoned Perez when to do so would expose her to significant professional and ethical consequences?  This perhaps explains why it was months before new attorneys stepped in to represent Perez to assert his only and best argument for relief—that his previous attorney had abandoned him.  The professional risk to which Khan exposed herself on failing to consult with her client and thereby abandoning him underscore the extent to which the relationship between Khan and Perez had been severed.   Under these circumstances, Perez cannot be held responsible for either the untimeliness of his appeal or the months of dithering before Khan withdrew and permitted unconflicted attorneys to represent Perez.

There is further irony stemming from Khan's abandonment of her client.  *Perez* did not receive notice of the judgment, so if he, not Khan, had submitted the motion to reopen the time to file an appeal, he likely would have been successful.  *See* FED. R. APP. P. 4(a)(6).  In fact, the district court specifically noted that it would have granted Perez's Rule 4(a)(6) motion.  Yet at the time, Khan was still purporting to act as Perez's representative.  Supposedly represented by counsel, Perez had no way of knowing of the district court's judgment and, in fact, was specifically prohibited from receiving notice under the relevant court rules.  *See* S.D. TEX. LOCAL R. 83.3 ("All communications about an action will be sent to the attorney-in-charge who is responsible for notifying associate counsel."); S.D. TEX. LOCAL R. 83.4 ("Notices will be sent only to the address on file.").    Even if he had learned about either the judgment or Khan's unilateral decision not to pursue an appeal, those same rules would have barred him from attempting to file a notice of appeal pro se.  *Cf., e.g.*, *United States v. Polidore*, 690 F.3d 705, 721 n.19 (5th Cir. 2012) (refusing to consider defendant's pro se motion because he was represented by counsel (citing 5TH CIR. R. 28.6. ("Unless specifically

directed by court order, pro se motions, briefs or correspondence will not be filed if the party is represented by counsel.")")).

As the Court explained in *Maples*, "a client cannot be charged with the acts or omissions of an attorney who has abandoned him. Nor can a client be faulted for failing to act on his own behalf when he lacks reason to believe his attorneys of record, in fact, are not representing him." 132 S. Ct. 924; *see also Hutchinson v. Florida*, 677 F.3d 1097, 1108-09 (11th Cir. 2012) (Barkett, J., concurring) ("A reasonable prisoner would have no cause to file his own pleadings for the simple reason that it is assumed that it is his lawyer's job to do so."). During the period of Khan's deliberate silence and inaction, she was not representing Perez, and yet Perez had no reason to believe that he was not being represented. Although Khan did not move away as did the attorneys in *Maples*, her functionality (or lack thereof) was as if she had. Accordingly, Khan abandoned Perez such that he may not be charged with Khan's omissions in failing to timely appeal. *See Maples*, 132 S. Ct. at 924.

## II.

No case from the Supreme Court, this circuit, or any other court disturbs the conclusion that attorney abandonment constitutes the kind of "extraordinary circumstance" envisioned by Rule 60(b)(6), permitting the reentry of judgment and a new appeal. First, in *Bowles v. Russell*, the district court denied habeas relief on September 9, 2003, and Bowles failed to file his notice of appeal within thirty days. 551 U.S. at 207. Instead, on December 12, 2003, Bowles moved, pursuant to Rule 4(a)(*6*), to reopen the period during which he could file his notice of appeal. *Id.* That rule permits a district court to extend the time to file a notice of appeal to fourteen days from the day on which the district court grants a motion to reopen; however, the rule is conditioned on a showing that the moving party *did not receive notice* under Federal Rule of Civil Procedure 77(d). FED. R. APP. P. 4(a)(6)(A); *Bowles*, 551

U.S. at 207.  Furthermore, although the district court granted the motion, it "inexplicably gave Bowles *17* days[] . . . to file his notice of appeal." *Bowles*, 551 U.S. at 207 (emphasis added).  In other words, the district court exceeded the plain scope of the allowance in Federal Rule of Appellate Procedure 4. And finally, the Court ruled that Rule 4(a)(6)'s express provision barred courts from creating equitable exceptions to that rule's jurisdictional requirements.  *Id.* at 214.  By contrast, there was no assertion of attorney abandonment in *Bowles* nor is there an express analog in Rule 4 to Rule 60(b)(6)'s allowance for equitable relief under extraordinary circumstances. *See* Fed. R. Civ. P. 60(b)(6); *Crosby*, 545 U.S. at 535.  Therefore, *Bowles* is distinguishable.

Second, both *Dunn v. Cockrell*, 302 F.3d 491, 492 (5th Cir. 2002), and *United States v. O'Neill*, 709 F.2d 361, 372-73 (5th Cir. 1983), involved attorney *negligence*, not attorney *abandonment*.  For instance, the petitioner in *Dunn* failed to timely appeal as a result of his attorneys' negligence.  302 F.3d at 492.  Because the time had expired for him to receive a Federal Rule of Appellate Procedure 4(a)(5) extension based on excusable neglect, Dunn attempted to invoke Rule 60(b)(1), which authorizes a district court to reopen a judgment on the exact same basis—excusable neglect.  In other words, he sought to use Rule 60(b)(1) to circumvent the precise relief afforded Federal Rule of Appellate Procedure 4(a)(5), and so we concluded that the Rule 60(b)(1) motion "squarely collide[d] with Rule 4(a)(5)" and therefore "must fail."  *Id.* at 493 (internal quotation marks omitted).  The *Dunn* court said nothing about the extraordinary circumstances created when an attorney abandons her client.

And in *O'Neill*, the federal government failed to timely file a notice of appeal of several orders granting summary judgment to the defendants because the government believed those orders were not final.  *See* 709 F.2d at

365.[10] Thus, it was in this context that the court affirmed the district court's denial of a Rule 60(b)(1) motion, which asserted mistake as the cause of the government's default, because the requested relief "squarely collide[d]" with Federal Rule of Appellate Procedure 4(a)(5) and was "being used only to extend the time for appeal." *Id.* at 373. Yet the government had been fully aware of the orders from which it sought to appeal but failed to do so timely because of an elementary misunderstanding, not because, thinking they were represented by competent counsel, they were wholly unaware of the rulings. The *O'Neill* court specifically admonished the government for failing to seek clarification with respect to this misunderstanding despite ample opportunity to do so. *See id.* at 374-75. Perez, by comparison, abandoned by his attorney, could not have sought such a clarification. Rather, as the *Maples* Court concluded, attorney abandonment constitutes an "extraordinary circumstance" distinguishing Perez's position from that of the government in *O'Neill*. *See* 132 S. Ct. at 927.[11]

And finally, the various out-of-circuit precedents on which the majority relies are distinguishable and unavailing in the face of *Maples*. One runs counter to the majority's conclusion, noting that a petitioner may rely on Rule 60(b) to extend the time for filing an appeal in extraordinary circumstances. *See Lacour v. Tulas City–Cnty. Jail*, 517 F. App'x 617, 619 (10th Cir. 2013) (unpublished). Several predate the Supreme Court's decision in *Maples*. *See White v. Jones*, 408 F. App'x 293, 293 (11th Cir. 2011) (unpublished); *In re Sealed Case (Bowles)*, 624 F.3d 482, 482 (D.C. Cir. 2010); *Joyner v. United States*, Cr. No. 3:06-0016, 2011 WL 2437531, at *1 (D.S.C. June 17, 2011). Several are unpublished, indicating that they were not meant to be

---

[10] Certain counterclaims against the government remained outstanding, although the district court had severed them. *Id*

[11] Thus, *O'Neil* is consistent with the rule announced in *Maples* because the *O'Neil* court acknowledged that Rule 60(b) relief could be afforded "in truly extraordinary cases." 709 F.3d at 373

precedential and further underscoring that they were not given the fuller treatment that comes with most published cases. *See Lacour*, 517 F. App'x at 617; *Cumberland Mut. Fire Ins. Co. v. Express Prods., Inc.*, Nos. 11-3919, 12-2155, 11-3943, 12-2156, 2013 WL 3481687, at *1 (3d Cir. June 24, 2013) (unpublished); *Hall v. Scutt*, 482 F. App'x 990, 990 (6th Cir. 2012) (unpublished) (per curiam); *White*, 408 F. App'x at 293. All but one involve attorney *negligence*, *see Hall*, 482 F. App'x at 990, or an allegation that the judgment was never received, *see Cumberland*, 2013 WL 3481687, at *2; *In re Sealed Case*, 624 F.3d at 482; *Garrett v. Prelesnik*, No. 2:09-CV-11076, 2012 WL 2342461, at *1 (E.D. Mich. May 4, 2012), both of which are precise circumstances Federal Rule of Appellate Procedure 4 is designed to address.[12] The exception is *White*, the only case cited by the majority that involved an allegation of attorney abandonment, *see White*, 408 F. App'x at 296 (Wilson, J., dissenting), yet that case is inapposite too. In *White*, the petitioner sought a stay of execution, which the panel majority denied principally because he had failed to act with the requisite diligence. *See id.* at 294-95 (majority opinion). Although the *White* court noted a "serious question" regarding whether a Rule 60(b) motion may be used to restart the filing period for a notice of appeal, it specifically declined to decide on this basis, ruling instead that there was no merit to White's underlying § 2254 claims. *See id.* at 295-96.

In sum, no case from the Supreme Court, this circuit, or any other court provides that attorney abandonment does not constitute the kind of extraordinary circumstances envisioned by Rule 60(b)(6), permitting the reentry of judgment and a new appeal therefrom when a habeas petitioner is abandoned. Because Khan abandoned Perez, the district court did not abuse

---

[12] *Joyner* is slightly different, but nevertheless distinguishable. The petitioner in *Joyner* alleged that he had timely mailed his notice of appeal to the district court but that the court had never received it. *See* 2011 WL 2437531, at *1

its discretion, and we may consider the merits of Perez's COA application, a question to which I now turn.

## III.

## A.

At trial, Perez testified that at the time of his arrest, his attorney had instructed him to remain silent. On direct examination, the following exchange occurred:

> Q:    And from that moment when [your attorney] told you that to this [day] you've not had an opportunity over the last year, based on your lawyers' advice, to tell anyone what really happened.

> A:    I have not said a word to anybody. It's been the most painful year of my life, not being able to say anything. Yes, I did leave that house, but I did not kill those people.

During closing argument, the prosecutor stated that it took Perez "a year to come up with" his story and further opined that "[w]hat he's done is he's worked for a full year on making up a story to fit the evidence." The trial court overruled defense counsel's Fifth Amendment objection to these statements.

The Texas Court of Criminal Appeals concluded that there was no constitutional error because "[t]he prosecutor's remarks were merely a summation of and reasonable deduction drawn from [Perez's] testimony." The district court agreed, observing that Perez had "'opened the door' to the prosecutor's comments" and that the prosecutor's comments spoke to Perez's credibility as a witness rather than his right not to testify.

## B.

This is precisely the situation that the Supreme Court confronted in *Doyle v. Ohio*, 426 U.S. 610 (1976). The *Doyle* defendants testified that they had been framed. *Id.* at 612-13. On cross-examination, the prosecutor questioned why the defendants had not presented this story initially, and the

trial court overruled defense counsel's objections on self-incrimination grounds. *Id.* at 614. The Supreme Court, however, reversed, explaining that "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Id.* at 618. The Court therefore held that "the use for impeachment purposes of [a petitioner's] silence at the time of arrest and after receiving *Miranda* warnings, violate[s] the Due Process Clause of the Fourteenth Amendment." *Id.* at 619.

Perez persuasively explains that the state did just what the prosecution sought to do in *Doyle*, namely use "the discrepancy between an exculpatory story at trial and silence at the time of arrest' to create 'an inference that the story was fabricated somewhere along the way' in order to 'fit within the seams of the State's case." *Id.* at 616. Accordingly, Perez has made a strong showing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner [on this issue] or [at least] that the issues presented were adequate to deserve encouragement to proceed further," *see Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see also* 28 U.S.C. § 2253(c), entitling him to a COA.[13]

## CONCLUSION

[13] The district court's reasoning to the contrary is unpersuasive. First, the district court provided only a cursory dismissal of *Doyle*, citing a footnote that addressed circumstances that are inapplicable in this case, namely when "a defendant . . . claims to have told the police the same version [of an exculpatory story told at trial] upon arrest." *See* 426 U.S. at 619 n.11. Second, the district court's citations to *Portuondo v. Agard*, 529 U.S. 61 (2000), and *United States v. Robinson*, 485 U.S. 25 (1988), are misplaced because both involve distinguishable circumstances. For instance, *Portuondo* permits a prosecutor to draw the jury's attention to the fact that a testifying defendant does so after every other witness and therefore has an opportunity to tailor his testimony accordingly, 529 U.S. at 73, but that is not what the prosecutor did here. And in *Robinson*, the Supreme Court permitted prosecutors to "fairly respond[] to an argument of the defendant by adverting to [his post-arrest] silence." 485 U.S. at 34. However, Robinson not only refused to testify at trial but also sought to argue that *the prosecution* was to blame for his failure to take the stand. *Id.* at 28. Perez did no such thing, so there was no argument to which the prosecution was entitled to respond under *Robinson*

Khan abandoned Perez when, on learning of the district court's judgment but without consulting her client or informing anyone, she made the deliberate and unilateral decision to not inform her client of his right to appeal and to not file a notice of appeal, thus barring his opportunity to pursue a likely successful COA application.  The majority's cramped interpretation to the contrary holds Perez responsible for Khan's failure, despite being wholly abandoned, and saddles him with a draconian sanction, namely depriving him of a crucial stage of federal habeas review—appellate consideration.  Further, today's decision does little to deter future misconduct by counsel such as Khan's in abandoning death-row clients at a most crucial stage of their proceedings.