Dissent by Judge BYBEE; Dissent by Judge WATFORD
OPINION
CHRISTEN, Circuit Judge:
Theodore Washington, an Arizona death row inmate, filed a notice of appeal (“NOA”) thirty-one days after the district court denied his petition for writ of habeas corpus. Federal Rule of Appellate Procedure 4(a)(1) limited the window for filing this notice to just thirty days, but the rules also provided a grace period for requesting an extension of time. Due to a combination of circumstances — including an error by the court — Washington did not request an extension because he did not learn that his NOA was one business day late until well after the grace period expired. Washington filed a motion under Federal Rule of Civil Procedure 60(b) asking the district court to vacate and reenter its judgment so that his appeal could be deemed timely. The district court denied his request, and he appeals.
The State argues that the district court lacked the authority to vacate and reenter its judgment, and that our court is without jurisdiction to consider Washington’s appeal. We disagree.
*1089 The filing deadline in Rule 4(a)(1) is mandatory and jurisdictional, but from their inception, the rules have also given district courts authority to grant relief from judgment. This is a death penalty case and we are mindful that both of Washington’s co-defendants received relief from their death sentences. Dismissal of Washington’s appeal would prevent any appellate review of the denial of his potentially meritorious habeas petition, yet it was a court error that prevented Washington from seeking an extension of time expressly allowed by the Rules. Therefore, having considered the interests of finality, the danger of prejudice to the State, that Washington missed the filing deadline by just one day, and the absence of any indication of bad faith by his lawyers, we conclude that relief was required under Rule 60(b)(1) or, alternatively, 60(b)(6). We reverse the district court’s order and remand for the district court to vacate and reenter its judgment nunc pro tunc as of June 9, 2005. Once judgment is reentered, Washington’s appeal from the denial of his petition for writ of habeas corpus will be timely and may be considered on its merits.
BACKGROUND
Washington is one of three co-defendants who were convicted in 1987 of first degree murder and other offenses after two of them entered a home and robbed and shot its occupants. State v. Robinson, 165 Ariz. 51, 796 P.2d 853, 856-58 (1990). All three defendants were sentenced to death. One of them, James Mathers, prevailed on direct appeal when the Arizona Supreme Court ruled that there was insufficient evidence to support his conviction. See State v. Mathers, 165 Ariz. 64, 796 P.2d 866, 873 (1990) (In Banc). The second co-defendant, Fred Robinson, argued in his federal habeas petition that the state trial court’s application of a “cruel, heinous, and depraved” sentencing enhancement was arbitrary and capricious, and that counsel was ineffective at the penalty phase of the defendants’ joint trial. See Robinson v. Schriro, 595 F.3d 1086, 1110—12 (9th Cir. 2010). Robinson was granted relief on habeas review, see id. at 1113, and on remand the state trial court resen-tenced him to sixty-seven years to life, see Judgment and Sentence, Case No. S1400CR87-14064 (Yuma Cty., Ariz., Oct. 25, 2011).
Washington’s case initially took the same procedural path as Robinson’s. The Arizona Supreme Court affirmed Washington’s conviction on direct appeal. State v. Robinson, 796 P.2d at 856. Washington filed a petition for post-conviction relief in the state trial court, which remarked that it had “a great deal of difficulty finding a basis to hold this defendant culpable which does not apply, at least equally or in a greater manner, to James Mathers [the co-defendant whose conviction the Arizona Supreme Court overturned for insufficient evidence]. If Mathers, who was present at all times before the entry into the ... [victim’s] residence, was not guilty of conspiring to rob and kill, no greater evidence seems to place this defendant at the scene.” Nevertheless, the court denied Washington’s petition, and the Arizona Supreme Court summarily denied his petition for review. Washington then filed a federal habeas corpus petition in the District of Arizona. Like Robinson, Washington argued that the state trial court erred by imposing a “cruel, heinous, and depraved” sentencing enhancement, and that he received constitutionally ineffective assistance of counsel during the penalty phase of his trial. Despite these similarities, the course of these cases sharply diverged on federal habeas review.
The district court’s denial of Washington’s federal habeas petition became final on June 8, 2005, but the court did not *1090 indicate whether it would grant a certifí-cate of appealability (“COA”). Washington had thirty days to file a NOA, see Fed. R. App. P. 4(a)(1), and the thirtieth day after the district court entered its judgment was Friday, July 8, 2005. Due to a calendaring error by Washington’s lawyers, his NOA and motion for a COA were filed on Monday, July 11, 2005, one business day after Rule 4(a)(l)’s filing deadline. The Federal Rules anticipate late filings: Rule 4(a)(5) provides a thirty-day grace period within which parties may request more time to file a NOA upon a showing of good cause or excusable neglect. See Fed. R. App. P. 4(a)(5). Washington had plenty of time to file a motion seeking additional time under Rule 4(a)(5), but due to a court error, he did not receive notice that his NOA was late, so he did not know that he needed an extension of time.
Two circumstances aligned to prevent Washington from learning that his NOA was late within the thirty-day period allowed to seek an extension. First, there were no filings in the district court case, and no entries on the district court docket, for over two and a half months after the NOA was filed. Nothing happened that would have prompted Washington’s lawyers to recalculate the Rule 4(a)(1) deadline, so nothing short of spontaneously recalculating its due date would have put Washington’s lawyers on notice of their calendaring error. Second, the district court clerk’s office did not promptly send Washington’s late-filed NOA to the appellate clerk, despite an express directive that it do so. In 2005, Federal Rule of Appellate Procedure 3(d) required the district clerk to “promptly send a copy of the notice of appeal” to the appellate clerk. Fed. R. App. P. 3(d). For reasons not apparent from the record, the district clerk did not comply with this rule. Rather, the clerk waited for the district court to rule on Washington’s motion for a COA before sending the NOA to the appellate court. The district court ruled on the motion for a COA on September 30, over two and a half months after it was filed; the clerk then sent the NOA on to the appellate court; and a week after receiving it, the appellate clerk issued an order to show cause why Washington’s appeal should not be dismissed as untimely. By then it was too late to seek an extension of time under Rule 4(a)(5), but within six days Washington filed a motion under Rule 60(b) asking the district court to vacate and reenter its judgment so that his appeal could be decided on the merits.
Washington’s motion was premised on Federal Rule of Civil Procedure 60(b)(1) or, alternatively, Rule 60(b)(6). He asked the district court to vacate and reenter its judgment denying his habeas petition either: (1) as of June 9, 2005, thereby rendering his original appeal timely; or (2) immediately, thereby triggering a new thirty-day filing window pursuant to Rule 4(a)(1). The district court concluded that it did not have authority to grant the requested relief, and it denied the motion. The court also reasoned that Washington’s case did not qualify for relief under Rule 60(b)(1) or 60(b)(6).
Washington separately appealed the district court’s order denying his Rule 60(b) motion. A three-judge panel of our court considered Washington’s appeal from the denial of his habeas petition (appeal No. 05-99009) and his appeal from the denial of his Rule 60(b) motion (appeal No. 07-15536). The panel concluded that it lacked jurisdiction to consider Washington’s appeal from the denial of his habeas petition because his NOA was filed one day late. Washington v. Ryan, 789 F.3d 1041, 1045 (9th Cir. 2015). The panel also affirmed the district court’s denial of Washington’s Rule 60(b) motion. Id. at 1046.
Our court granted rehearing en banc. Washington v. Ryan, 811 F.3d 299 (9th Cir. 2015) (mem.). We have jurisdiction *1091 pursuant to 28 U.S.C. §§ 1291 and 2253(a), and we reverse the district court’s denial of Washington’s Rule 60(b) motion.
STANDARD OF REVIEW
We review for an abuse of discretion a district court’s ruling on a motion for relief from judgment pursuant to Rule 60(b). Casey v. Albertson’s Inc., 362 F.3d 1254, 1257 (9th Cir. 2004). We review de novo any question of law underlying the district court’s ruling. Lal v. California, 610 F.3d 518, 523 (9th Cir. 2010).
DISCUSSION
Washington argues that there are three ways this court can reach the merits of his habeas appeal: (1) decide that the district court abused its discretion by denying relief from judgment under Rule 60(b)(1) or 60(b)(6); (2) construe his motion for a COA as a Rule 4(a)(5) motion for an extension of time to file a NOA; or (3) deem his NOA premature, not untimely, because he filed it before the district court issued a COA. The State argues that Rule 4(a)’s time limits, which have a statutory basis in 28 U.S.C. § 2107, are mandatory and jurisdictional, and that Washington’s failure to comply with those limits precludes this court from exercising jurisdiction over his habeas appeal.
Rule 60(b) permits the district court to vacate and reenter judgment to restore the right to appeal in limited circumstances. This conclusion is consistent with 28 U.S.C. § 2107, Rule 4(a), and case law from the Supreme Court, our own circuit, and the Sixth and Seventh Circuits. The district court misperceived the extent of its authority to grant Washington’s Rule 60(b) motion. Washington’s case is in the narrow band of cases for which relief from judgment is appropriate. We therefore reverse the district court’s order denying relief. Because we conclude that well-established authority entitles Washington to relief under Rule 60(b), we do not reach his arguments that we should construe his motion for a COA as a Rule 4(a)(5) motion, or that his NOA was premature.
I. Washington is Entitled to Relief Under Rule 60(b).
The district court premised its denial of Washington’s Rule 60(b) motion on two separate grounds. First, it concluded that Washington sought to use Rule 60(b) to “circumvent the ‘mandatory and jurisdictional’ provisions of [the 30-day deadline for filing an appeal provided in Rule 4(a)(1) ].” Second, the court concluded that, even if Rule 60(b) gave the court authority to reenter judgment for purposes of rendering Washington’s appeal timely, Washington would not be entitled to relief under Rule 60(b)(1) or 60(b)(6). We respectfully disagree with both conclusions. Several circuit courts, including our own, have recognized that the ability to vacate and reenter judgment pursuant to Rule 60(b) is consistent with the jurisdictional nature of Rule 4(a)’s deadlines, and the circumstances of Washington’s case compel relief under Rule 60(b)(1) or, alternatively, Rule 60(b)(6).[1]
*1092 A. In Exceptional Cases, Rule 60(b) Authorizes District Courts to Vacate and Reenter Judgments to Reset the Time to Appeal.
The Supreme Court “has long held that the taking of an appeal within the prescribed time is ‘mandatory and jurisdictional.’” Bowles v. Russell, 551 U.S. 205, 209, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007) (quoting Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 61, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982) (per curiam)). But the Supreme Court has also recognized that a district court’s authority to provide relief from judgment includes the authority, in certain circumstances, to vacate and reenter a judgment to restore the opportunity to appeal. See Hill v. Hawes, 320 U.S. 520, 64 S.Ct. 334, 88 L.Ed. 283 (1944). The Federal Rules have been amended since Hill, and some of those amendments limit the relief available to parties who fail to timely appeal due to lack of notice that judgment was entered. But Washington’s case is not a lack-of-notice case, and Congress has neither amended the rules nor enacted a statute to abrogate the district court’s authority to vacate and reenter judgment where other grounds support a Rule 60(b) motion.[2]
In Hill, the Supreme Court recognized that district court authority to vacate and reenter judgment includes the authority to do so for the purpose of restoring the opportunity to appeal. See id. at 523-24, 64 S.Ct. 334. Hill missed the original deadline to file his appeal because he did not receive timely notice of the district court’s judgment. Id. at 521, 64 S.Ct. 334. The Supreme Court affirmed the district court’s order vacating and reentering its judgment in order to trigger a new filing deadline. Id. at 523-24, 64 S.Ct. 334. In doing so, the Court confirmed that the district court’s reentry of judgment was consistent with the general authority it retained over its cases. See id.
The dissent reads Hill as a narrow decision limited to parties who do not receive notice of judgment, and to filing deadlines established by rule, not statute. But Hill is not so limited. Hill did not question that the district court lacked authority to extend the appeal deadline, id. at 523, 64 S.Ct. 334, yet it approved the district court’s decision to reenter judgment to restore the opportunity to appeal. The Hill dissent argued that the majority’s decision would allow federal judges “to make a dead letter of the statutory limit of the period for appeal.” Id. at 526, 64 S.Ct. 334 *1093 (Stone, C.J., dissenting) (emphasis added). And, contrary to the dissent’s interpretation, the Rules Committee also read Hill as creating a broad form of relief. It warned that the decision “g[a]ve the district court power, in its discretion and without time limit ... to vacate a judgment and reenter it for the purpose of reviving the right of appeal.” Fed. R. Civ. P. 77 advisory committee’s note to 1946 amendment. In the aftermath of this decision, the Committee responded by trim-' ming, not eliminating, the authority Hill recognized.
By 1991, the Committee had amended the Federal Rules in three ways significant to Washington’s case.[3] First, the Committee added Federal Rule of Appellate Procedure 4(a)(5), which provided a thirty-day grace period to allow a litigant who missed Rule 4(a)(l)’s filing deadline an opportunity to move for an extension of time to file an appeal. See Fed. R. App. P. 4(a)(5). Parties may be entitled to an extension under Rule 4(a)(5) if they show excusable neglect or good cause. Fed. R; App. P. 4(a)(5)(A)(ii).
Second, the Committee added Rule 4(a)(6), which is specific to cases in which parties miss Rule 4(a)(l)’s deadline due to lack of notice of the district court’s judgment. See Fed. R. App. P. 4(a)(6). This rule authorizes an “outer time limit” of 180 days to move for an extension of time to file an appeal. Fed. R. App. P. 4(a)(6) advisory committee’s note to 1991 amendment. A district court may not otherwise relieve parties from failing to file a timely appeal due solely to lack of notice of judgment. See Fed. R. Civ. P. 77(d) (“Lack of notice of the entry [of judgment] does not ... authorize the court to relieve ... a party for failing to appeal within the time allowed, except as allowed by [Rule] 4(a).”).
Third, the Committee expanded the grounds for relief under Rule 60(b) to encompass the “various kinds of relief from judgments which were permitted in the federal courts prior to the adoption” of the rules. Fed. R. Civ. P. 60 advisory committee’s note to 1946 amendment; see also Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 235, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995) (recognizing that Rule 60(b) “codified judicial practice that pre-existed”). As Hill demonstrates, these “various kinds of relief’ included the district court’s ability to grant relief from judgment for the purpose of restoring the right to appeal. Many courts recognized the validity of using Rule 60(b) for this very purpose.[4] See also Klapprott v. United States, 335 U.S. 601, 615, 69 S.Ct. 384, 93 L.Ed. 266 (1949) (recognizing that Rule 60(b) “vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice”).
After the addition of Rule 4(a)(6), we held that Rule 60(b) is not available to restore appeal rights in lack-of-notice cases. In re Stein, 197 F.3d 421, 423, 426 (9th Cir. 1999) (explaining that our case law allowing Rule 60(b) relief to retrigger appeal rights was rendered “obsolete and *1094 inapplicable” to lack-of-notice cases “by the 1991 addition of Rule 4(a)(6)”). Our sister circuits agreed. See Zimmer St. Louis, Inc. v. Zimmer Co., 32 F.3d 357, 361 (8th Cir. 1994) (“[T]he plain language of both Fed. R. App. P. 4(a)(6) and Fed. R. Civ. P. 77(d) addresses specifically the problem of lack of notice of a final judgment.”); see also Vencor Hosps., Inc. v. Standard Life & Accident Ins. Co., 279 F.3d 1306, 1311 (11th Cir. 2002) (same); Clark v. Lavallie, 204 F.3d 1038, 1041 (10th Cir. 2000) (same).
This history shows that Congress acted in the years since Hill to narrow the circumstances under which late-filed appeals may be accepted, but despite several sets of amendments, changes to § 2107 and the Federal Rules have not abrogated district courts’ traditional authority to grant relief from judgment in cases — like Washington’s — where “a notice of appeal is filed late for reasons other than lack of notice.” Tanner v. Yukins, 776 F.3d 434, 441 (6th Cir. 2015). Indeed, after the 1991 amendments, several courts have had occasion to explicitly recognize that Rule 60(b) may be used, sparingly, to restore the right to appeal in extraordinary cases when parties rely on grounds other than lack of notice.
One such case was Mackey v. Hoffman, where our own court followed the Supreme Court’s reasoning in Maples v. Thomas, — U.S. -, 132 S.Ct. 912, 181 L.Ed.2d 807 (2012), and identified attorney abandonment as an extraordinary circumstance that justified relief under Rule 60(b).[5] 682 F.3d 1247, 1253 (9th Cir. 2012); see also Lai, 610 F.3d at 524 (recognizing attorney’s gross negligence as extraordinary circumstance justifying relief from judgment where counsel failed to prosecute a wrongful death action). Mackey was a federal habeas petitioner who learned of the judgment entered against him after Rule 4(a)(6)’s 180-day period had passed because his attorney abandoned him and never informed him of the status of his case. Mackey, 682 F.3d at 1249-50. Citing In re Stein, the district court concluded that it lacked discretion to provide relief from judgment under Rule 60(b). Id. at 1250. We reversed, and explained that the limitations on district court authority identified in In re Stein apply only to Rule 77(d) lack-of-notice cases. See id. at 1252. Mackey and In re Stein are consistent with the conclusion that Rule 60(b) relief remains available for extraordinary cases outside of the lack-of-notice context.[6]
The Seventh Circuit reached a similar conclusion in Ramirez v. United States, 799 F.3d 845 (7th Cir. 2015), where a federal habeas petitioner missed the deadline to file a NOA after his counsel abandoned him. Id. at 849. The Seventh Circuit saw “no reason to distinguish between actions at the state level that result in procedural default and the consequent loss of a chance for federal review” — describing the posture in Maples — “and actions at the *1095 federal level that similarly lead to a procedural default that forfeits appellate review” — as was the posture in Mackey. Id. at 854.
Finally, notwithstanding Rule 4(a)(l)’s jurisdictional time limit, the Sixth Circuit held in Tanner that the district court had authority to vacate and reinstate its denial of a habeas petition pursuant to Rule 60(b). 776 F.3d at 441. This afforded a new thirty-day window to file an appeal. Tanner was nearly illiterate but she managed to prepare an appeal from the denial of her habeas petition with the assistance of a prison writ-writer. Id. at 436. She wound up filing it one day late because her prison unit was placed on lockdown, and prison guards threatened to put her in solitary confinement if she left her cell to meet her filing deadline. See id. The district clerk’s office processed the appeal, not realizing that it was late. Id. at 436-37. By the time the circuit court received the NO A, the thirty-day period for requesting an extension had expired, and Tanner’s appeal was dismissed for lack of jurisdiction. Id. at 437. Tanner responded by filing a successful 42 U.S.C. § 1983 lawsuit against the guards who interfered with her constitutionally guaranteed access to the court. Id. Armed with a judgment recognizing the unconstitutional nature of the guards’ actions, Tanner sought relief in her habeas case under Rule 60(b)(6). Id. As the district court did in Washington’s case, the district court in Tanner denied relief because it concluded that Rule 4(a)(l)’s time limit is jurisdictional and that granting relief under Rule 60(b) would impermissi-bly circumvent the rule’s jurisdictional limits. See id. at 437-38.
The Sixth Circuit reversed. In doing so, the court recognized that Rule 60(b) dates back to the earliest promulgation of the Federal Rules, that the rule “is simply the recitation of pre-existing judicial power,” id. at 438 (quoting Plaut, 514 U.S. at 234-35, 115 S.Ct. 1447), and that the amendments to the Federal Rules have limited this authority only where the reason for a late filing is lack of notice of judgment, see id. at 441-43. The Sixth Circuit remanded Tanner’s case with instructions to vacate and reenter judgment. Id. at 444. Its decision is consistent with the mandatory nature of the filing deadline in Rule 4(a)(1) and the relief we grant Washington today.
The dissent incorrectly states that only the Sixth Circuit is in accord with our decision. This misstates the law of other circuits. For example, the dissent relegates the Seventh Circuit’s recent Ramirez decision to a footnote, selecting instead the Seventh Circuit’s earlier case, Bell v. Eastman Kodak Co., 214 F.3d 798 (7th Cir. 2000). Bell did not categorically hold that Rule 60(b) may not be used to restore appeal rights in non lack-of-notice cases. It simply decided that the basis for the Rule 60(b) motion in that case — one that should have been argued on direct appeal because it challenged the trial judge’s interpretation of evidence — did not warrant Rule 60(b) relief, and that an appeal from the denial of such a motion is functionally an appeal from the underlying judgment itself. See id. at 800.
The dissent also relies on the Third Circuit’s decision in West v. Keve, 721 F.2d 91 (3d Cir. 1983). But West does not stand for the broad proposition that using Rule 60(b) to restore appeal rights is inconsistent with § 2107. Indeed, when the Third Circuit later “reaffirm[ed] West,” it acknowledged “exceptional circumstances that justify relief under Rule 60(b) outside the time constraints of Rule 4(a)(5)” for the purpose of preserving appeal rights. Burkett v. Cunningham, 826 F.2d 1208, 1217 (3d Cir. 1987), abrogated on other grounds by Betterman v. Montana, — U.S. -, 136 S.Ct. 1609, 194 L.Ed.2d 723 (2016). By pointing to factually distinguishable cases *1096 from other circuits, the dissent misses the broader point that there is a solid line of case law recognizing that district courts have the ability to restore appeal rights, in limited circumstances, by vacating and reentering judgment.
The only circuits we are aware of to suggest such relief is never available are the Fifth and Eleventh Circuits. See Perez v. Stephens, 745 F.3d 174, 176 (5th Cir. 2014); Jackson v. Crosby, 437 F.3d 1290, 1296 (11th Cir. 2006). Perez is nothing like Washington’s case because it addressed a situation in which counsel affirmatively decided not to file an appeal, rather than a situation in which external circumstances prevented an appeal from being filed. 745 F.3d at 176. And in Jackson, the Eleventh Circuit had previously dismissed an appeal as untimely and viewed a later-filed Rule 60(b) motion as a request that the district court circumvent its earlier decision. 437 F.3d at 1296. The result we reach today is consistent with our own case law and case law from the Sixth and Seventh Circuits— decisions recognizing that this use of Rule 60(b) is not new, that it has been rarely but consistently used for decades, and that Congress 'did not eliminate it when it imposed other limitations in the years since the Supreme Court’s decision in Hill.
The State argues that Rule 60(b) is unavailable to assist Washington because its plain language authorizes relief from “judgment,” there is no infirmity in the judgment entered against Washington, and the problems in this case arose only after the judgment was entered. But Rule 60(b) does not require that the asserted grounds for relief exist before judgment is entered, and Rule 60(b)’s history and use make clear that it is not so limited. See, e.g., Fed. R. Civ. P. 60 advisory committee’s note to 1946 amendment (noting Rule 60(b) encompasses grounds for relief that existed before the rule’s adoption); see also Tanner, 776 F.3d at 444 (recognizing Rule 60(b) relief may be appropriate for grounds arising after judgment was entered); Mackey, 682 F.3d at 1254 (same); Burkett, 826 F.2d at 1217 (same); Wilson, 725 F.2d at 258 (same); Rodgers, 722 F.2d at 460 (same); Hensley, 651 F.2d at 227 (same); Mizell, 586 F.2d at 944 n.2 (same).
The State also argues that we lack jurisdiction to hear Washington’s appeal because, in 28 U.S.C. § 2107(c), Congress specifically limited the amount of time by which district courts can extend the period for filing NOAs. The State and the dissent rely heavily on Bowles v. Russell, 551 U.S. 205, 127 S.Ct. 2360. There, the district court granted a Rule 4(a)(6) motion to reopen the time to file an appeal, but it inexplicably authorized three more days than the rule allows. Id. at 207, 127 S.Ct. 2360. The Supreme Court noted the “mandatory and jurisdictional” nature of Rule 4(a) deadlines and concluded that the court of appeals lacked jurisdiction to hear an appeal filed before the expiration of the court-imposed deadline, but after the expiration of the period allowed by the rule. Id. at 209-10, 213-15, 127 S.Ct. 2360. The Court reiterated that federal courts have “no authority to create equitable exceptions to jurisdictional requirements.” Id. at 214, 127 S.Ct. 2360.[7]
We, are not persuaded that Bowles dictates the outcome of Washington’s appeal. Bowles did not address Rule 60(b) and did *1097 not purport to announce a new principle of law. Botóles described as “long held” the principle that appeal deadlines are mandatory and jurisdictional, id. at 209, 127 S.Ct. 2360, and it did nothing to call into question -the similarly “long held” district court authority under Rule 60(b).[8] Id. at 205, 127 S.Ct. 2360. In fact, Bowles relied on Browder v. Director, Department of Corrections, 434 U.S. 257, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978), a case that supports our decision. Bowles, 551 U.S. at 209-10, 127 S.Ct. 2360 (citing Browder for the proposition that Rule 4(a) is jurisdictional). Broivder was a habeas case in which the state respondent filed an untimely motion for an evidentiary hearing after the district court granted habeas relief. See 434 U.S. at 260-61, 98 S.Ct. 556. The Supreme Court concluded that the circuit court lacked jurisdiction because the untimely motion for an evidentiary hearing did not toll Rule 4(a)’s limit on the time to appeal. See id. at 264-65, 271-72, 98 S.Ct. 556. Critically, the State argued that the motion it filed in the district court was not based on Rule 60(b). Id. at 263, 98 S.Ct. 556.
Justice Blackmun wrote separately to concur in the judgment, joined by Justice Rehnquist. The concurrence explained that if the state had not “disavowed any reliance on Rule 60(b),” its motion likely could have been considered a motion under Rule 60(b)(1) or 60(b)(6). See id. at 274, 98 S.Ct. 556 (Blackmun, J., concurring). The concurrence observed that, had this been the case, an order from the district court reinstating its judgment would have started a new appeal period and respondent’s NOA would have been timely. Id. at 272, 98 S.Ct. 556. Justice Blackmun saw “no obligation on [the] Court’s part to attempt to rescue respondent’s case on a Rule 60(b) basis” because the respondent insisted that it had not relied on Rule 60(b) in the trial court. Id. at 274, 98 S.Ct. 556.
The core principle from Bowles and Browder — that federal courts lack equitable authority to extend Rule 4(a)’s jurisdictional deadlines — is the same principle recognized in Hill. See Hill, 320 U.S. at 523, 64 S.Ct. 334 (“It goes without saying that the District Court could not extend the period [to appeal] fixed by Rule.... ”). But Hill identified a second principle that does no violence to the first: federal court authority to relieve parties from judgment, now vested in Rule 60(b), includes the authority to vacate and reenter the judgment in extraordinary circumstances to restore the thirty-day opportunity to appeal. See id. at 523-24, 64 S.Ct. 334.
For decades, courts have sparingly but consistently exercised their authority under Rule 60(b) to restore appeal rights. Neither Congress nor the Supreme Court has seen fit to limit this authority except in lack-of-notice cases.
B. Washington is entitled to relief under Rule 60(b)(1).
The district court ruled that Washington’s case did not warrant relief under Rule 60(b)(1) because he did “not demonstrate[ ] that he acted diligently in diseov- *1098 ering the untimely filing” and because Washington failed to make “any effort to confirm the timeliness of his NO A until notified by the Ninth Circuit.”
Rule 60(b)(1) authorizes relief from judgment for “mistake, inadvertence, surprise, or excusable neglect.” On appeal, Washington relies on mistake and excusable neglect. In Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), the Supreme Court explained that excusable neglect under Rule 60(b)(1) applies when a party’s failure to file on time is within “his or her control.” Id. at 394, 113 S.Ct. 1489. Motions ■for relief from judgment under Rule 60(b)(1) must be filed within one year from the entry of judgment and they must satisfy the four-factor test the Supreme Court established in Pioneer. The test considers: (1) the danger of prejudice to the non-moving party; (2) the length of the filing delay and its potential impact on the proceedings; (3) the reason for the filing delay; and (4) whether the moving party acted in good faith. Id. at 395, 113 S.Ct. 1489; see also Ahanchian v. Xenon Pictures, Inc., 624 F.3d 1253, 1261 (9th Cir. 2010); Briones v. Riviera Hotel & Casino, 116 F.3d 379, 381-82 (9th Cir. 1997). A district court must fully consider these factors in every case; we have explicitly rejected per se rules for determining whether a mistake is excusable. See Pincay v. Andrews, 389 F.3d 853, 860 (9th Cir. 2004) (en banc).
In cases decided before Rule 4(a)(6) was adopted, we required parties to show diligence before invoking Rule 60(b)(1) for the purpose of restoring the opportunity to appeal. See Rodgers v. Watt, 722 F.2d 456, 460 (9th Cir. 1983). Rodgers was a lack-of-notice case, but we see no reason to remove this requirement for parties like Washington who seek relief for reasons other than lack of notice. See Lewis v. Alexander, 987 F.2d 392, 396 (6th Cir. 1993) (applying Rodgers to a non lack-of-notice case). In addition — consistent with the Supreme Court’s emphasis in Pioneer that “all relevant circumstances surrounding” the parties’ failure to make a timely filing must be considered, 507 U.S. at 395, 113 S.Ct. 1489—we consider the stakes at issue. Here, the stakes are extraordinarily high because Washington faces a death sentence.
Before applying the Pioneer test, we note that while Washington’s initial calendaring error deprived him of the right to appeal within Rule 4(a)(l)’s time limit, it was the separate failure to realize that his appeal was late — and that he needed to seek a Rule 4(a)(5) extension — that ultimately caused Washington’s appeal to be dismissed. The district court recognized this; its order denying Washington’s motion for Rule 60(b) relief focused on Washington’s failure to discover his calendaring error. The court implicitly ruled that the failure to catch the first error in time to seek a Rule 4(a)(5) extension was not excusable neglect. Under the circumstances of this case, application of the Pioneer test compels a different outcome.
The first Pioneer factor favors relief. The State has not argued that it would be prejudiced if Washington’s habeas appeal is heard on the merits. Nor could it; the State has been on notice of Washington’s intent to appeal since one business day after the initial Rule 4(a)(5) deadline. Second, the length of the delay and its potential impact on the proceedings also favors granting relief: even considering the time required to resolve the Rule 60(b) motion, reentering judgment so that Washington’s appeal could move forward would have added only an insignificant amount of time in the context of this case. Third, the reason for the initial late filing is uncontested. Washington’s lawyers simply miscalculated the date the NOA was due and calendared *1099 it one day too late.[9] Washington’s lawyers did not catch their initial filing error because, after the NOA was filed, nothing prompted them to recalculate the due date. There were no filings before the appellate court’s order to show cause that should have prompted Washington or his lawyers to recalculate Rule 4(a)(l)’s filing deadline, and the State does not point to any event or other communication from the court or between the parties that should have put Washington on notice of the error. The final Pioneer factor is whether the moving party acted in good faith. Here, there is no suggestion that Washington’s lawyers missed the 4(a)(5) window in bad faith or to gain advantage, and we have said that where other factors counsel relief, a calendaring mistake and related failure to catch that mistake is no bar to Rule 60(b)(1) relief. See Ahanchian, 624 F.3d at 1262.
As for the district court’s concern that Washington’s lawyers were not diligent in recognizing their mistake, even daily monitoring of the docket would not have revealed that Washington’s NOA was late. Washington filed his NOA and request for a COA on July 11, 2005. No other entries appeared on the district court docket until the district court’s September 30 ruling on Washington’s motion for a COA. We do not require lawyers to spontaneously recalculate Rule 4(a)’s filing deadlines after they file a NOA when there is no suggestion from the court or the docket that the NOA was late. Rule 4 itself does not demand perfection — its drafters created a grace period in Rule 4(a)(5) precisely because mistakes happen. Washington’s lawyers are responsible for the initial late filing, but we cannot say they lacked diligence for failing to detect their late filing in time to seek an extension. The district court abused its discretion in concluding otherwise.
Granting Washington relief would have had only a negligible effect on the proceedings, but denying relief eliminated any federal appellate review of the habeas petition in this capital case. This tremendous disparity, in combination with consideration of the Pioneer factors, amply justified relief from judgment under Rule 60(b)(1).
C. In the Alternative, Washington is entitled to relief under Rule 60(b)(6).
If relief from judgment is not available under Rule 60(b)(1) — (5), Rule 60(b)(6) authorizes the district court to grant relief from judgment for “any other reason that justifies relief.” To justify relief under Rule 60(b)(6), a party must show external “ ‘extraordinary circumstances’ suggesting that the party is faultless in the delay.” Pioneer, 507 U.S. at 393, 113 S.Ct. 1489. The district court denied Washington’s Rule 60(b)(6) motion because it concluded that the motion was “not grounded in external, extraordinary circumstances not otherwise addressed by Rule 60(b)(1) — (5).”
Our review of the record in this case persuades us that external circumstances did prevent Washington from discovering that his appeal was late, and from seeking an extension of time before Rule 4(a)(5)’s grace period expired. The dissent does not acknowledge it, but the record is unique in its clarity on this point.[10]
*1100 When Washington filed his NOA in 2005, Federal Rule of Appellate Procedure 3(d) required the district court clerk to “promptly send a copy of the notice of appeal” to the appellate clerk. The district clerk’s office did not comply with this rule. Instead, the clerk waited over two and a half months, until the district court issued the COA, before sending Washington’s NOA to the appellate court. The dissent protests that Rule 3(d) “does not specify a time within which the district court must act,” but the rule did require that the NOA be forwarded promptly, and we cannot conceive of a definition in which a nearly three-month delay qualifies as “prompt.” Nor can the few courts that have considered the question. See, e.g., Yadav v. Charles Schwab & Co., Inc., 935 F.2d 540, 541 (2d Cir. 1991) (district court clerk violated Rule 3(d) by failing to forward NOA to the court of appeals for nearly three months). The record does not reveal why the district court did not comply with Rule 3(d). The clerk may have thought that it was sufficient to comply with Federal Rule of Appellate Procedure 22(b)(1), which at the time required the clerk to “send the certificate [of appealability] ... to the court of appeals with the notice of appeal.” Fed. R. App. P. 22(b)(1) (1999) (emphasis added). Whatever the clerk’s reason, Rule 22(b)(1) did not render Rule 3(d) a nullity; the clerk was required to comply with Rule 3(d) and also with Rule 22(b)(1).
These two rules served different functions in a coordinated scheme: Rule 22(b) facilitated the administrative transfer of habeas cases from the district court to the appellate court. Forwarded together, the NOA and COA gave the appellate clerk notice of the transfer of jurisdiction and of the issues presented for appeal. See generally 28 U.S.C. § 2253; Fed. R. App. P. 4. Rule 3(d) served an entirely different purpose. It was intended to give the court of appeals “increased practical control over the early steps in the appeal.” Fed. R. App. P. 3(d) advisory committee’s note to 1979 amendment.
The dissent questions how it could be that the rules may have required the district clerk to forward the NOA twice in situations like this one, where there was a delay between the entry of judgment and a ruling on the motion for a COA. This requirement, the dissent claims, “makes no sense.” But it makes perfect sense. It was the district court’s entry of judgment, not its ruling on a COA, that started the clock on Rule 4(a)’s deadlines. See Fed. R. App.. P. 4(a)(1)(A). Once the clock began ticking, Rule 3(d)’s “prompt” requirement ensured the appellate clerk received the NOA in time to identify, and permit the parties to cure, jurisdictional defects before Rule 4(a)(5)’s grace period expired.
The Second Circuit recognized as much in Yadav, one of the few published opinions addressing Rule 3(d). See 935 F.2d at 541. The plaintiffs in Yadav filed a premature NOA and failed to renew their filing after the district court ruled on their motion for reconsideration. This rendered their appeal untimely under Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982), superseded in part by Fed. R. App. P. 4(a)(4)(B)(i), 1993 amendments. The Second Circuit excused the failure to refile because the district clerk failed to promptly forward the premature NOA to the appellate clerk, and therefore “omitted an *1101 important step in the appellate process.” Yadav, 935 F.2d at 541-42. There, like here, “if ... the notice had been promptly forwarded to this Court, we could have promptly dismissed the appeal at a time when the appellants would still have had 30 days” to cure their jurisdictional defect. Id. at 542. The answer to the dissent’s question is apparent when it is remembered that any defects in a NOA affect the jurisdiction of the appellate court, not the district court, hence Rule 3(d)’s sensible requirement that the NOÁ be forwarded to the appellate clerk 'promptly. See id. at 541-42.
Washington’s appeal, like the Yadavs’, illustrates why Rule 3(d) directs that NOAs must be forwarded promptly. One week after receiving the NOA, the appellate clerk issued an order to show cause why Washington’s appeal should not be dismissed as untimely. Six days after that, Washington filed his Rule 60(b) motion. The record does not require that we speculate about what would have happened if Washington’s NOA had been forwarded without delay: if the NOA had been forwarded promptly, Washington would have received notice with two weeks remaining in Rule 4(a)(5)’s grace period, he would have had ample time to request an extension, and it cannot be doubted that he would have done so. We know this because it took just six days for Washington’s lawyers to respond once they received the order to show cause. The district court abused its discretion by not crediting the combination of the court’s failure to promptly forward the NOA to the appellate clerk and the time it took to rule on the COA as external factors that foreclosed Washington’s opportunity to seek an extension of time.[11]
11. We Do Not Reach Washington’s Alternative Arguments.
Washington’s NOA and COA were docketed just after Rule 4(a)(5)’s thirty-day grace period began. Washington argues on appeal that his motion for a COA may be construed as a request for an extension of time under Rule 4(a)(5); if granted, this request would render his appeal timely. Well-reasoned case law supports the proposition that “[a]ny submission signed by a party that may fairly be read as a request to the district court to ... permit a late appeal should suffice” as a motion for additional time under Rule 4(a)(5). Campos v. LeFevre, 825 F.2d 671, 676 (2d Cir. 1987). This is consistent with the Supreme Court’s recent statements that it is “a good thing ... that courts sometimes construe one kind of filing as another” to “identify[ ] a route to relief.” See Mata v. Lynch, — U.S. -, 135 S.Ct. 2150, 2156, 192 L.Ed.2d 225 (2015). But Washington never raised this argument before the district court despite his opportunity to do so.[12]
*1102 Washington also adopts an argument advanced by amicus, that the order denying his § 2254 habeas petition did not become final and appealable until the district court ruled on his motion for a COA. See 28 U.S.C. § 2253(c) (a COA is a prerequisite to appeal of an order denying a § 2254 petition). As far as we are aware, this argument is one of first impression. Because we conclude that the circumstances of Washington’s case entitle him to relief under well-established authority applying Rule 60(b)(1) or, alternatively, 60(b)(6), we do not reach Washington’s alternative arguments.
CONCLUSION
Having traced the history and interpretation of Rule 60(b), we conclude that when Congress adopted the Federal Rules, it entrusted the courts with the essential task of identifying the rare cases that warrant reentry of judgment for purposes of restoring the right to appeal. Subsequent amendments have not abrogated that authority and district courts have discharged this obligation with care. Of the thousands of judgments entered by district courts each year, only a handful have been found to warrant this type of relief. We conclude that Washington’s is one of them.
We reverse the district court’s denial of Washington’s motion for relief from judgment pursuant to Rule 60(b) in appeal No. 07-15536. On limited remand, the district court shall vacate and reenter its judgment denying Washington’s petition for writ of habeas corpus, nunc pro tunc, June 9, 2005. After the district court reenters its judgment, Washington’s appeal from the denial of his § 2254 petition may proceed in appeal No. 05-99009. We do not reach the remainder of Washington’s arguments. No new briefing is authorized by this decision.
REVERSED AND REMANDED.

. The dissent mischaracterizes this decision, and its implications. Our opinion does not rely on the district court's equitable authority or purport to extend the Rule 4(a)(5) deadline to conclude Washington is entitled to relief. It relies on the court’s express authority under Rule 60(b). Recognizing this narrow authority does not "put[] a hole right through” the Rule 4(a) appeal deadlines, as the dissent fears. Courts have used this authority, sparingly, for decades to restore the thirty-day window to file an appeal; a handful of cases have been found to warrant this type of relief. To reach its extravagant conclusions, the dissent repeats a few key errors: it misconstrues our own circuit’s case law, see In re Stein, 197 F.3d 421 (9th Cir. 1999), misstates case law from our sister circuits, and erroneously asserts that the majority relies solely on a missed filing deadline. The dissent also relies heavily on Bowles v. Russell, 551 U.S. 205, *1092 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007), though Bowles says nothing about Rule 60(b). In fact, Bowles relies on another Supreme Court case that strongly supports our decision.

. The Federal Rules and its amendments were authorized by the Rules Enabling Act, see ch. 651, 48 Stat. 1064 (1934) (codified as amended at 28 U.S.C. §§ 2071-2077 (2012)), under which Congress delegated to the Supreme Court its rule-making authority over the “practice and procedure” of federal courts, United States v. Jacobo Castillo, 496 F.3d 947, 954 (9th Cir. 2007) (en banc) (quoting 28 U.S.C. § 2072(a)). The Rules Enabling Act also established a committee to evaluate and propose amendments to the Rules. See 28 U.S.C. § 2073. The Supreme Court transmits proposed amendments to Congress no later than May 1 of the year in which the amendments are to take effect and the amendments are deemed adopted on December 1 of the same year unless Congress rejects them. See 28 U.S.C. § 2074(a). The dissent suggests Rule 4(a) rests on different authority because it “codifies” and "implement[s]” 28 U.S.C. § 2107, but Congress has amended § 2107 to track Rule 4(a), not the other way around. See 16A Charles Alan Wright et al., Federal Practice and Procedure § 3950.3 (4th ed. 2016) (describing history of § 2107). The dissent offers no authority for its implied assertion that the Federal Rules of Appellate Procedure have a superior statutory foundation than that of the Federal Rules of Civil Procedure.

. During the same time period, Congress enacted § 2107 and periodically amended it to track these rule amendments. See 16A Charles Alan Wright et al., Federal Practice and Procedure § 3950.3 (4th ed. 2016).

. See, e.g., Rodgers v. Watt, 722 F.2d 456, 460 (9th Cir. 1983); Burkett v. Cunningham, 826 F.2d 1208, 1217 (3d Cir. 1987), abrogated on other grounds by Betterman v. Montana, - U.S. -, 136 S.Ct. 1609, 194 L.Ed.2d 723 (2016); Wallace v. McManus, 776 F.2d 915, 917 (10th Cir. 1985), superseded by rule, Fed. R. App. P. 4(a)(6), as recognized in Clark v. Lavallie, 204 F.3d 1038, 1040 (10th Cir. 2000); Wilson v. Atwood Grp., 725 F.2d 255, 258 (5th Cir. 1984) (en banc); Hensley v. Chesapeake & Ohio Ry. Co., 651 F.2d 226, 227 (4th Cir. 1981); Mizell v. Attorney Gen. of State of N.Y., 586 F.2d 942, 944 n.2 (2d Cir. 1978).

. In Maples, the Court held that petitioner's state post-conviction attorneys’ abandonment, which caused petitioner to miss a state filing deadline, constituted an “extraordinary circumstance!] beyond his control” that lifted the state procedural bar to his federal petition. Maples, 132 S.Ct. at 924 (quoting Holland v. Florida, 560 U.S. 631, 659, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010)).

. The dissent accuses us of sub silentio overruling In re Stein, but this is plainly wrong. We simply recognize, as our court previously recognized in Mackey and as we did in In re Stein itself, that In re Stein's holding is limited to lack-of-notice cases. See Mackey, 682 F.3d at 1252 ("Unlike the appellants in In re Stein, Mackey is not seeking to utilize Rule 60(b)(6) to cure a Rule 77(d) lack of notice’ problem.”); In re Stein, 197 F.3d at 426 (distinguishing prior Ninth Circuit case law that permitted Rule 60(b) relief to restore appeal rights as "rendered obsolete and inapplicable to this type of [lack-of-notice] case") (emphasis added).

. The D.C. Circuit cited Bowles when it ruled that the district court lacked authority to provide Rule 60(b) relief "to circumvent the 180-day deadline of Appellate Rule 4(a)(6),” even in particularly compelling circumstances. See In re Sealed Case, 624 F.3d 482, 489 (D.C. Cir. 2010) (affirming denial of Rule 60(b) motion in a lack-of-notice case where appellant was not allowed to review a sealed docket despite written and oral inquiries to the clerk of the court). In re Sealed Case was a particularly harsh result, but as we recognized in In re Stein, there does not appear to be any other avenue of relief in pure lack-of-notice cases.

. The dissent argues that by relying on Rule 60(b), the majority impermissibly circumvents the § 2107 time limits governing appeals. But under the dissent’s view, many other types of Rule 60(b) motions would also “circumvent” those statutory limits. For example, a party may appeal a district court's judgment after the court rules on a timely post-judgment motion, such as a Rule 60(b) motion, even if the court waits months before ruling, and even if the court denies the motion. Such an appeal would be filed more than "30 days after entry of the judgment or order appealed from,” Fed. R. App. P. 4(a)(1)(A), and it would not be subject to an extension under Rule 4(a)(5) or 4(a)(6). Of course, Rule 4(a)(4) tolls the time to appeal in such cases, but Rule 4(a)(4) has the same statutory footing as Rule 60(b).

. We have affirmed orders granting Rule 4(a)(5) relief for negligent calendaring errors. See, e.g., Pincay, 389 F.3d at 860 (paralegal read Rule 4(a)(1) as permitting 60 days to appeal, the time allowed when the government is a party to the case, even though the government was not a party); Marx v. Loral Corp., 87 F.3d 1049, 1053-54 (9th Cir. 1996) (appeal deadline docketed a day late because of failure to realize August contains thirty-one days), overruled, on other grounds by Lacey v. Maricopa Cty., 693 F.3d 896 (9th Cir. 2012) (en banc).

. The State argues that the only external circumstances that are relevant to Rule *1100 60(b)(6) are those that prevent the initial filing of an appeal in compliance with Rule 4(a)(1), not those that prevent a petitioner from realizing that the appeal was untimely in time to seek a Rule 4(a)(5) extension. We see nothing to support this distinction. The princi-pie from Hill that district court authority to provide relief from judgment includes the authority to vacate and reenter judgment to restore appeal rights applies equally to Rule 4(a)(5) and Rule 4(a)(1).

. The sequence of events that thwarted Washington's appeal cannot be repeated. The Committee amended Rule 22 in 2009 and the current rule directs that NOAs be forwarded even if no COA has issued: "[w]hen an applicant has filed a notice of appeal, the district clerk must transmit the record to the court of appeals; if the district judge has issued a [COA], the district clerk must include in this transmission the certificate.” Fed. R. App. P. 22 advisory committee's note to 2009 amendment (emphasis added). Thus, even if court staff mistakenly consult Rule 22 in isolation, it is plain that the NOA must be forwarded without waiting for the COA. Also in 2009, the Committee added a new rule that requires a district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant.” Rule 11(a), Rules Governing § 2254 Cases.

. Washington filed two Rule 60(b) motions with the district court after he learned his NOA was late. A three-judge panel of our court vacated the district court’s order denying Washington's first 60(b) motion because the case had not been remanded and the district court lacked jurisdiction. The panel then issued a limited remand to permit Washington to file a second Rule 60(b) motion. Neither motion argued that his motion for a *1102 COA should be construed as a motion for a Rule 4(a)(5) extension.